# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AREX INDUSTRIES, INC.,<br><br>Defendant.<br><br>AREX INDUSTRIES, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD.,<br><br>Counterdefendant. | Case No. 2:22-cv-01692-JWH-PD<br><br>**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF No. 23]; PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF No. 25]; and PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM [ECF No. 44]** |

The Court addresses the following three motions:

- Defendant and Counterclaimant Arex Industries, Inc. moved to dismiss the Complaint of Plaintiff and Counterdefendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd., ("ZYA");[1]
- ZYA moved for a preliminary injunction;[2] and
- ZYA moved to dismiss Arex's Amended Counterclaim.[3]

The Court finds these matters appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[4] the Court orders that Arex's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, ZYA's PI Motion is **DENIED**, and ZYA's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

## I.  BACKGROUND

### A.  Procedural History

ZYA commenced this action in March 2022.[5] Two months later, Arex filed its instant Motion to Dismiss, and that same day ZYA filed the instant PI Motion. Ten days

---

[1]  Def.'s Mot. to Dismiss ("Arex's Motion to Dismiss") [ECF No. 23].

[2]  Pl.'s Mot. for Prelim. Inj. (the "PI Motion") [ECF No. 25].

[3]  Pl.'s Mot. to Dismiss Am. Countercl. ("ZYA's Motion to Dismiss") [ECF No. 44].

[4]  The Court considered the documents of record in this action, including the following papers:
- Compl. (the "Complaint") [ECF No. 1];
- Arex's Motion to Dismiss;
- Decl. of Alexander Chen in Supp. of Arex's Motion to Dismiss (including its attachment) [ECF No. 24];
- Countercl. (the "Counterclaim") [ECF No. 29];
- Pl.'s Opp'n to Arex's Motion to Dismiss ("ZYA's Opposition") (including its attachment) [ECF No. 30];
- Def.'s Reply in Supp. of Arex's Motion to Dismiss [ECF No. 33];
- PI Motion (including its attachment);
- Def.'s Opp'n to the PI Motion (the "PI Opposition") (including its attachment) [ECF No. 31];
- Pl.'s Reply in Supp. of PI Motion (the "PI Reply") (including its attachments) [ECF No. 34];
- First Am. Countercl. (the "Amended Counterclaim") [ECF No. 40];
- ZYA's Motion to Dismiss;
- Def.'s Opp'n to ZYA's Motion to Dismiss [ECF No. 45]; and
- Pl.'s Reply in Supp. of ZYA's Motion to Dismiss [ECF No. 46].

[5]  *See* Complaint. Unless otherwise noted, all dates are in 2022.

later, Arex filed its original Counterclaim.[6] In mid-July, Arex amended its Counterclaim.[7] ZYA responded later that month with its instant Motion to Dismiss Arex's Amended Counterclaim. All three Motions are fully briefed.

### B. Factual Allegations

#### 1. ZYA's Complaint

In its Complaint, ZYA alleges the following:

Arex and ZYA are competing businesses.[8] Both companies manufacture and sell auto and motorcycle parts and accessories.[9] As is relevant here, both companies sell LED projector headlights for the 2018, 2019, and 2020 models of the Ford F150 pickup truck.[10]

In October 2021, Arex sent demand letters titled "Demand to Cease and Desist Selling and/or Shipment of Infringing Products" (the "Demand Letters") to ZYA's business partners.[11] In those Demand Letters, Arex alleged that ZYA's LED projector headlights infringe Arex's U.S. Design Patent No. D909,634 (the "D'634 Patent"), which is entitled "Vehicle Headlight."[12] Accordingly, Arex demanded that ZYA's partners immediately cease and desist their sale, distribution, importation, and shipment of ZYA's LED projector headlights. Several of ZYA's partners complied with Arex's demands and ceased using ZYA's LED projector headlights.

ZYA denies that its activities concerning its LED projector headlights infringe Arex's D'634 Patent.[13] Earlier in 2022, ZYA requested that Arex withdraw its Demand

---

[6] *See* Counterclaim.

[7] *See* Amended Counterclaim. Because Arex's filing of its Amended Counterclaim replaced its original Counterclaim, the Court will **DENY** ZYA's motion to dismiss Arex's original Counterclaim [ECF No. 39] **as moot**.

[8] Complaint ¶ 24.

[9] *Id.* at ¶¶ 11-14.

[10] *Id.* at ¶¶ 22, 23 & 26.

[11] *Id.* at ¶ 25.

[12] *Id.* at ¶ 26.

[13] *See, e.g., id.* at ¶ 35.

Letters.[14]  Arex did not respond.[15]  ZYA avers that it has suffered serious harm because of the Demand Letters.[16]

In its Complaint, ZYA asserts the following claims for relief:

- declaratory judgment of non-infringement of the D'634 Patent;
- unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
- trade libel; and
- tortious interference with prospective economic advantage.[17]

### 2. Arex's Amended Counterclaim

In its Amended Counterclaim, Arex alleges that ZYA is the owner of U.S. Design Patent No. D925,796 (the "D'796 Patent"), which is entitled "Car Headlight."[18]  Arex also avers that when ZYA filed the application that issued as the D'796 Patent, ZYA "copied all of the key ornamental features of Arex's F150 headlight that are embodied in the [D'634 Patent]."[19]  Arex asserts the following claims for relief against ZYA:

- infringement of the D'634 Patent;
- willful infringement of the D'634 Patent;
- declaratory judgment of invalidity of the D'796 Patent; and
- declaratory judgment of unenforceability of the D'796 Patent.[20]

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250

---

[14]   *Id.* at ¶ 33.

[15]   *Id.* at ¶ 34.

[16]   *Id.* at ¶¶ 36 & 37.

[17]   According to the Complaint's caption, ZYA seeks relief for "tortious interference contract [*sic*] and prospective economic advantage."  *See* Complaint.  But, according to the Complaint's text, ZYA asserts a claim for relief for "tortious interference with prospective economic advantage."  For the purposes of this Order, the Court presumes that the Complaint's text best conveys the substance of ZYA's claim for relief.

[18]   Amended Counterclaim ¶ 28.

[19]   *Id.*

[20]   *Id.* at ¶¶ 9-68.


F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

B.   **Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

C.   **Preliminary Injunction**

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In

the Ninth Circuit, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

## III.  ANALYSIS

### A.  Arex's Motion to Dismiss

#### 1.  Declaratory Judgment

Arex argues that ZYA's claim for relief for declaratory judgment is insufficiently pleaded.[21]  To support that position, Arex contends that ZYA: (1) identifies only one third-party recipient that allegedly received one of the Demand Letters; and (2) fails to "identify or attach the communication that allegedly caused the harm."[22]  Arex argues that because of those failures, ZYA's Complaint does not meet the *Twombly* and *Iqbal* pleading standards.[23]  Arex cites **no** authority, however, to support its argument that *Iqbal* and *Twombly* require ZYA to identify more than one third-party or to "identify or attach the communication that allegedly caused the harm."[24]  Because Arex fails to cite any authority to support its argument, Arex's Motion to Dismiss is **DENIED** with respect to ZYA's declaratory judgment claim.

#### 2.  Unfair Competition

ZYA brings its second claim for relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL").[25]  In its Motion to Dismiss, Arex argues that ZYA's UCL claim: (1) is legally barred by the litigation privilege;[26] and (2) is insufficiently pleaded.[27]

---

[21]  *See* Arex's Motion to Dismiss 9:7-20.

[22]  *Id.* at 9:10-12.

[23]  *Id.* at 9:12-13.

[24]  ZYA's Complaint describes the allegedly harmful communications in some detail.  Arex's use of the word "identify" is therefore puzzling.

[25]  *See* Complaint ¶¶ 51-58.

[26]  Arex's Motion to Dismiss 9:21-11:5.

[27]  *Id.* at 11:6-12:24.

### a. Litigation Privilege

In California, a publication is privileged if it is made "[i]n any . . . judicial proceeding." Cal. Civ. Code § 47(b). "Despite the limited reach of its statutory language, California courts have given Section 47(b) extraordinarily broad construction and application." *Langley v. Check Game Sols., Inc.*, 2006 WL 8455429, at *3 (S.D. Cal. Apr. 14, 2006). Today, the privilege afforded by § 47(b) "extend[s] to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution." *Edwards v. Centex Real Est. Corp.*, 53 Cal. App. 4th 15, 29 (1997) (emphasis in original) (collecting cases).

The litigation privilege "applies to prelitigation communications . . . ." *Fotohaus, LLC v. Proforma, Inc.*, 2019 WL 1493355, at *2 (N.D. Cal. Apr. 4, 2019) (quotation omitted); *see also Knoell v. Petrovich*, 76 Cal. App. 4th 164, 169 (1999) (demand letters can be protected). A prelitigation communication is only protected, however, when it "relates to litigation that is contemplated in good faith and under serious consideration." *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1161 (C.D. Cal. 2010) (quoting *Action Apartment Assoc., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007)). "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." *Id.* at 1161-62 (quoting *Action Apartment Assoc.*, 41 Cal. 4th at 1251). At the motion-to-dismiss stage, the Court must take the facts in the light most favorable to the plaintiff. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1030 (N.D. Cal. 2011) (declining to hold that the litigation privilege protected a cease-and-desist letter at the motion-to-dismiss stage).

Additionally, the litigation privilege arises only "at the point in time when litigation is no longer a mere possibility, but has instead ripened into a *proposed proceeding* that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute." *Ruiz v. Harbor View Cmty. Assn.*, 134 Cal. App. 4th 1456, 1473 (2005), *as modified on denial of reh'g* (Jan. 11, 2006), *as modified* (Jan. 13, 2006) (quoting *Edwards*, 53 Cal. App. 4th at 39) (emphasis in original). While § 47(b) "does not prop the barn door wide open for any and every sort of prelitigation charge or innuendo," *Nguyen v. Proton Tech. Corp.*, 69 Cal. App. 4th 140, 150 (1999), "[a]ny doubt about whether the privilege applies is resolved in favor of applying it," *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2013 WL 368365, at *10 (N.D. Cal. Jan. 29, 2013) (quoting *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002)).

Here, ZYA alleges that Arex sent the Demand Letters "in bad faith" and "with knowledge of their falsity or with reckless disregard for their truth or falsity."[28] Because the Court must take the allegations in the light most favorable to the plaintiff—*i.e.*, ZYA—the Court declines to conclude that the litigation privilege applies *at this stage* in the proceedings.[29]

### b. Insufficient Pleading

California's UCL prohibits business acts that are unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. § 17200. "Each prong of the UCL is a separate and distinct theory of liability[.]" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citing *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)). Here, however, ZYA pleads its claim under the UCL as a single cause of action.[30] Frustratingly, neither party appears to grasp that each prong of the UCL constitutes a separate theory of liability.

In its Motion to Dismiss, Arex argues incorrectly that, under the UCL, a "plaintiff must allege facts that establish that the defendant's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."[31] As the Court details below, that averment is correct with respect to only the UCL's *unfair* prong. As a general matter, however, "[t]he UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016) (quotation omitted). As explained below, ZYA fails to state a claim for relief under the unlawful and unfair prongs, but it does state a claim under the fraudulent prong.

### i. Fraudulent

Averments of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to plead the circumstances constituting a claim for fraud or mistake with particularity. *Id*. Under that rule, a plaintiff must "identify the who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about a statement, and why it is false." *Ebeid* ex rel. *U.S. v.*

---

[28] Complaint ¶ 68. ZYA failed to point to that allegation in ZYA's Opposition.

[29] Arex argues that ZYA's third and fourth claims for relief are also legally barred by the litigation privilege. *See* Arex's Motion to Dismiss 12:25-13:6 & 13:22-14:4. Arex's Motion to Dismiss is **DENIED** with respect to those arguments for the same reasons articulated above.

[30] Complaint ¶¶ 51-58.

[31] Arex's Motion to Dismiss 11:20-23.

*Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Additionally, it is well settled in the Ninth Circuit that the Federal Rules of Civil Procedure, including Rule 9(b), apply in federal court, "irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) therefore applies to averments of fraud, even within the context of a UCL claim. *See id.*

ZYA alleges the who (*i.e.*, Arex), the what (*i.e.*, the allegedly false Demand Letters), the when (*i.e.*, October 2021), the where (*i.e.*, mailed to ZYA's partners), and the how (*i.e.*, mailing the Demand Letters). ZYA avers, moreover, that it was injured by the fraudulent activity. Accordingly, the Court concludes that ZYA has stated a claim under the UCL's fraudulent prong. Arex's Motion to Dismiss is **DENIED** in that respect.

### ii. Unlawful

"A violation of almost any law may serve as a basis for a UCL claim" under the unlawful prong. *Anthem*, 162 F. Supp. 3d at 989 (quotation omitted). "However, a UCL claim must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *Id.* (quotation omitted). Here, ZYA fails to identify in its UCL claim what law Arex supposedly violated.[32] Accordingly, ZYA fails to state a claim under the unlawful prong. To the extent that ZYA attempts to allege a separate claim under the unlawful prong, it is **DISMISSED with leave to amend**.

### iii. Unfair

"The unfair prong of the UCL prohibits a business practice that 'violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'" *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (quoting *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)). When a business asserts a claim for relief against a competitor under the unfair prong, that claim must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999). To that end, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

---

[32] *See generally* ZYA's Opposition.

ZYA's Complaint does not allege behavior that implicates antitrust policy. Arex raises that point in its Motion to Dismiss; specifically, Arex avers that the Complaint fails to satisfy the *Cel-Tech* test.[33] In its Opposition, ZYA fails to address whether the *Cel-Tech* test applies.[34] Accordingly, the Court regards any argument that the Complaint satisfies the *Cel-Tech* test as waived. *See Hartranft v. Encore Cap. Grp., Inc.*, 2021 WL 2473951, at *10 (S.D. Cal. June 16, 2021) ("where a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived"). To the extent that ZYA asserts a claim for relief under the UCL's unfair prong, that claim is **DISMISSED with leave to amend**.

### 3. Trade Libel

"Trade libel is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff." *Nichols v. Great Am. Ins. Companies*, 169 Cal. App. 3d 766, 773 (1985) (quotation omitted). California courts define disparagement as an "[i]njurious falsehood." *Id.* (quotation omitted). Thus, to state a claim for trade libel in California, a plaintiff must allege "(1) a publication [of a disparaging statement]; (2) which induces others not to deal with plaintiff; and (3) special damages." *Id.*

The issue here is whether the disparaging statement must concern the *quality* of a product or service. Arex points to caselaw suggesting that the false statements must concern "the quality of services or product of a business."[35] *See City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 376 (2013). ZYA does not challenge Arex's averment that disparaging statements must be related to product quality.[36] Accordingly, any argument to the contrary is waived. *See Hartranft*, 2021 WL 2473951, at *10. Because ZYA's claim for trade libel does not refer to any disparaging statement regarding product quality, Arex's Motion to Dismiss the trade libel claim is **GRANTED**, and that claim is **DISMISSED with leave to amend**.

### 4. Tortious Interference with Prospective Economic Advantage

The elements of tortious interference with prospective economic advantage are as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt

---

[33] *See* Arex's Motion to Dismiss 11:13-26.

[34] *See generally* ZYA's Opposition.

[35] Arex's Motion to Dismiss 13:10-13.

[36] *See generally* ZYA's Opposition.

the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quotation omitted). In addition, "a plaintiff seeking to recover damages for interference with prospective economic advantage must plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Id.* (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)).

In its Motion to Dismiss, Arex invokes the *Della Penna* standard.[37] ZYA fails to address Arex's argument that ZYA does not satisfy that standard.[38] Accordingly, once again, any argument to the contrary is waived. *See Hartranft*, 2021 WL 2473951, at *10. Arex's Motion to Dismiss is **GRANTED**, and ZYA's claim for tortious interference with prospective economic advantage is **DISMISSED with leave to amend**.

### B. PI Motion

To obtain a preliminary injunction in a patent infringement case, a movant must show: (1) "that absent an injunction, it will suffer irreparable harm"; and (2) "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement" (or alleged non-infringement in this case). *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).

ZYA fails to satisfy either requirement. To support irreparable harm, ZYA contends that Arex's "conduct causes harm to [ZYA's] goodwill generally and its goodwill in the industry" and that Arex "has also caused [ZYA] to lose concrete business opportunities."[39] Mere allegations without factual support are, however, insufficient to demonstrate irreparable harm to support a preliminary injunction. The "clear showing" of irreparable harm required by the Supreme Court demands "factual support beyond the allegations of the complaint." *CI Games S.A. v. Destination Films*, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)). ZYA makes conclusory statements without evidentiary support, thereby dooming its request for injunctive relief. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (rejecting as insufficient "affidavits [that] are conclusory and without sufficient support in facts"); *see also Straumann USA, LLC v. TruAbutment Inc.*, , 2019 WL 6887172, at *3 (C.D. Cal. Oct. 1, 2019) (no irreparable harm where movant failed to "provide[] any evidence or data showing that financial or

---

[37]      *See* Arex's Motion to Dismiss 14:5-23.

[38]      *See generally* ZYA's Opposition.

[39]      PI Motion 22:16-18.

reputational harm has resulted (*i.e.*, by demonstrating a negative impact on sales or by substantiating claims that the [patented device] has been abandoned by [customers])").

Even if ZYA could establish its claimed harms or potential harms, it has nevertheless failed to show that such harms cannot be fully addressed by an award of monetary damages. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (noting the patentee's obligation to establish "clearly [] that monetary damages could not suffice"); *see also Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) (reversing preliminary injunction where patentee presented "no more than attorney's argument" and noting that "neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction").

Additionally, ZYA asserts that because it "has shown that it is likely to prevail on the merits of its claims for non-infringement of patent, unfair competition, trade libel and tortious interference with contract, irreparable harm must be presumed."[40] But ZYA cites no authority in support of that proposition. Even assuming that ZYA could show a likelihood of success on the merits on any claim, the Court declines to apply such a presumption because it is contrary to Supreme Court authority. *See Winter*, 555 U.S. at 20 ("[a] plaintiff seeking a preliminary injunction **must** establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest"); *see also id.* at 22 (a preliminary injunction may be awarded only "upon a clear showing" of evidence that supports **each** relevant preliminary injunction factor). Further, as previously noted, a party seeking a preliminary injunction in a patent case "must establish a causal nexus between the infringement and the alleged harm," which ZYA has not done. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016).

Finally, the Court observes that ZYA's delay in seeking extraordinary relief is an additional factor weighing against granting such relief. Rather than seeking a preliminary injunction when it commenced this case, ZYA did not file this motion until two months later, only after it learned that Arex planned to file a Motion to Dismiss.[41] Absent a good explanation, a substantial period of delay "militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (collecting cases in which delays ranging from seven and one

---

[40]   *Id.* at 23:3-6.

[41]   *Compare* Complaint (filed March 14, 2022), *with* PI Motion (filed May 13, 2022); *see also* Arex's Motion to Dismiss (filed May 13, 2022).

half to 15 months undercut claims of irreparable harm). ZYA provides no explanation for its delay between commencing this case and seeking a preliminary injunction.

Because ZYA fails to demonstrate irreparable harm, the Court need not address the other factors. *See e.g.*, *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994) ("we specifically decline today to require a district court to articulate findings on the third and fourth factors when the court denies a preliminary injunction because a party fails to establish either of the two critical factors").

The Court declines to rule on Arex's request for Rule 11 sanctions, which Arex raised in opposition to the PI Motion. Since Arex seeks affirmative relief via that request, to the extent it wishes to pursue it, Arex must present that request in a motion that complies with the requirements of the applicable Local Rules and Federal Rules of Civil Procedure, including Rule 11.

### C.  ZYA's Motion to Dismiss

#### 1.  Willful Infringement

In its Amended Counterclaim, Arex alleges that ZYA willfully infringed its D'634 Patent. Arex contends that ZYA may have had actual knowledge of the D'634 Patent as early as February 2019, but, at a minimum, ZYA had notice since December 2021 when counsel for ZYA responded to Arex's cease-and-desist letter.[42] ZYA responds that Arex's Counterclaim for willful infringement fails because the cease-and-desist letter that Arex sent to ZYA cannot serve as the foundation for ZYA's knowledge of the D'634 Patent.[43] ZYA argues that there is no evidence that it knew that its products were infringing the D'634 Patent, "let alone evidence of the type of egregious conduct necessary to support a willful infringement claim."[44]

To state a claim for willful patent infringement, a plaintiff must first plausibly allege that the accused infringer had pre-suit knowledge of the patent in suit. *See Scripps Research Inst. v. Illumina, Inc.*, 2016 WL 6834024, *7 (S.D. Cal. Nov. 21, 2016) ("Yet even after *Halo*, '[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.'" (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), and referring to *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S.

---

[42]   Amended Counterclaim ¶ 25.

[43]   ZYA's Motion to Dismiss 10:12-14.

[44]   *Id.* at 11:9-10.

93 (2016))). Here, Arex's allegation that ZYA responded to Arex's cease-and-desist letter meets the knowledge requirement of willful infringement.

ZYA may be correct that there is no evidence of egregious conduct, but Arex's Amended Counterclaim sufficiently pleads the required allegations for willful infringement. Although ZYA did not need to stop marketing its product once it received Arex's cease-and-desist letter, in its Amended Counterclaim Arex alleges that ZYA did nothing in response to Arex's allegations of patent infringement. ZYA's acknowledgment of Arex's cease-and-desist letter, combined with its inaction when faced with information about the alleged patent infringement, is sufficient at the pleading stage.

### 2. Unenforceability of ZYA's D'796 Patent

Arex alleges in its Amended Counterclaim that ZYA's D'796 Patent is unenforceable due to inequitable conduct.[45] "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Rule 9(b) governs inequitable conduct claims. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (internal quotation marks and bracket omitted). To meet this standard, the Federal Circuit—like other circuits—requires the pleading party to identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

Thus, a well-pleaded claim for inequitable conduct must allege facts demonstrating that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27.

With respect to materiality, "[w]here a patent applicant fails to disclose prior art to the PTO, the prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1292.

As a threshold matter, Arex fails to plead that an individual associated with the filing and prosecution of the patent was engaged in inequitable conduct; rather, Arex

---

[45] Amended Counterclaim ¶¶ 52-68.

alleges that ZYA as an entity was responsible.[46] Because Arex does not identify any specific individual associated with filing or prosecuting the underlying patent application—including who was responsible for the alleged inequitable conduct—Arex fails to satisfy the pleading standard. *See Exergen Corp*, 575 F.3d at 1329 (holding that a defendant's failure to identify the "who" of material omissions and misrepresentations was insufficient to plead the defense of inequitable conduct).

Additionally, Arex does not meet the pleading standard for describing with particularity how ZYA carried out the alleged inequitable conduct. Specifically, Arex appears to speculate that ZYA obtained access to the undisclosed prior art. Arex alleges on information and belief that ZYA "devised a scheme" through which it would copy Arex's patent and that ZYA "obtained a sample" of Arex's patent and copied key features,[47] but the pleading fails without additional factual specificity regarding the alleged scheme and how it amounted to inequitable conduct. Without more specificity regarding the undisclosed prior art and how ZYA obtained it, Count Four of the Amended Counterclaim fails to state a claim for inequitable conduct.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Arex's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, as follows:

    a. To the extent that ZYA asserts a claim for relief under the UCL's unlawful and unfair prongs, Arex's Motion to Dismiss is **GRANTED**, and ZYA's UCL claim is **DISMISSED with leave to amend**.

    b. Arex's Motion to Dismiss is **DENIED** with respect to ZYA's claim for relief under the UCL's fraudulent prong.

    c. Arex's Motion to Dismiss is **GRANTED** in that ZYA's claims for trade libel and for tortious interference with prospective economic advantage are **DISMISSED with leave to amend**.

    d. Arex's Motion to Dismiss is **DENIED without prejudice** with respect to Arex's arguments regarding the application of the litigation privilege.

---

[46]  *Id.* at ¶ 53.

[47]  *Id.* at ¶¶ 61 & 62.

2. ZYA's PI Motion is **DENIED**.

3. ZYA's motion to dismiss [ECF No. 39] Arex's original Counterclaim is **DENIED as moot**.

4. ZYA's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, as follows:

    a. ZYA's Motion to Dismiss is **DENIED** with respect to Arex's claim for willful infringement of the D'634 Patent.

    b. ZYA's Motion to Dismiss is **GRANTED** in that Arex's claim for declaratory judgment of unenforceability of the D'796 Patent for inequitable conduct is **DISMISSED with leave to amend**.

5. ZYA is **DIRECTED** to file an amended pleading, if at all, no later than June 23, 2023. If ZYA chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Complaint that provides the Court with a redline version that shows the amendments. If ZYA fails to file an amended pleading by June 23, 2023, then the Court will **DISMISS with prejudice** ZYA's claim for relief under the UCL's unlawful and unfair prongs and ZYA's claims for trade libel and for tortious interference with prospective economic advantage.

6. Arex is likewise **DIRECTED** to file an amended pleading, if at all, no later than June 23, 2023. If Arex chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to First Amended Counterclaim that provides the Court with a redline version that shows the amendments. If Arex fails to file an amended pleading by June 23, 2023, then the Court will **DISMISS with prejudice** Arex's claim for inequitable conduct.

7. Arex is **DIRECTED** to file its response to ZYA's operative pleading no later than July 14, 2023.

8. If Arex files an amended pleading, then ZYA is **DIRECTED** to file its response thereto no later than July 14, 2023.

9.      If Arex fails to file its amended pleading by June 23, 2023, then the Court will **DISMISS with prejudice** Arex's claim for declaratory judgment of unenforceability of the D'796 Patent for inequitable conduct.

**IT IS SO ORDERED.**

Dated: June 7, 2023

*[Signature]*

John W. Holcomb
UNITED STATES DISTRICT JUDGE