# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD., | Case No. 2:22-cv-01692-JWH-PD |
| Plaintiff, | **ORDER REGARDING COUNTERDEFENDANTS' MOTIONS TO STRIKE AND TO DISMISS THIRD AMENDED COUNTERCLAIM [ECF Nos. 106 & 117]** |
| v. | |
| AREX INDUSTRIES, INC., | |
| Defendant. | |
| AREX INDUSTRIES, INC., | |
| Counterclaimant, | |
| v. | |
| ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD., ZHEJIANG HONGGUANG LIGHTING TECHNOLOGY, CO., LTD., and YONGHUO WANG, | |
| Counterdefendants. | |

## I.  SUMMARY OF DECISION

Before the Court are two matters for resolution:

- the motion of Plaintiff and Counterdefendant Zhejiang Yuanzheng Auto &
  Motorcycle Accessories Co., Ltd. ("ZYA"), to strike and to dismiss the Third
  Amended Counterclaim filed by Defendant and Counterclaimant Arex Industries,
  Inc;[1] and
- the motion of Counterdefendants Zhejiang Hongguang Lighting Technology, Co.,
  Ltd. ("ZHL") and Yonghuo Wang (jointly, "Counterdefendants") to strike and to
  dismiss that same pleading—Arex's Third Amended Counterclaim.[2]

The Court conducted a hearing on Counterdefendants' Motion in October 2024.  After
considering the papers filed in support and in opposition,[3] as well as the argument of
counsel at the hearing, the Court orders that the Motions are **GRANTED in part** and
**DENIED in part**.

## II.  BACKGROUND

The parties are familiar with the history of this case.  As relevant here, Arex and
ZYA are competing businesses that manufacture and sell auto and motorcycle parts and
accessories, including LED projector headlights for the 2018, 2019, and 2020 models of
the Ford F150 pickup truck.[4]  In March 2022, ZYA filed its Complaint in this action,
seeking declaratory judgment that it does not infringe U.S. Patent No. D909,634 (the
"D'634 Patent"), which is assigned to Arex.[5]

---

[1]     Pl.'s Mot. to Strike and to Dismiss the Third Am. Countercl. ("ZYA's Motion") [ECF
No. 106].

[2]     Counterdefs.' Mot. to Strike and to Dismiss the Third Am. Countercl.
("Counterdefendants' Motion") [ECF No. 117].

[3]     The Court considered the documents of record in this action, including the following
papers:  (1) Third Am. Countercl. (the "Third Amended Counterclaim") [ECF No. 100];
(2) ZYA's Motion; (3) Def.'s Opp'n to ZYA's Motion (the "ZYA Motion Opposition") [ECF
No. 109] (including its attachment); (4) Pl.'s Reply in Supp. of ZYA's Motion (the "ZYA's
Reply") [ECF No. 110]; (5) Counterdefendants' Motion; (6) Def.'s Opp'n to
Counterdefendants' Motion (the "Counterdefendants' Motion Opposition") [ECF No. 121];
and (7) Counterdefs.' Reply in Supp. of Counterdefendants' Motion ("Counterdefendants'
Reply") [ECF No. 122].

[4]     Complaint ¶ 11–14, 22–24, & 26.

[5]     *Id.* at ¶¶ 46-50.

In May 2022, Arex filed a Counterclaim for infringement and willful infringement of its D'634 Patent and for declaratory judgment of invalidity and unenforceability of ZYA's U.S. Patent No. D725,796 (the "D'796 Patent").[6]  In July 2022, Arex filed a First Amended Counterclaim,[7] and ZYA moved to dismiss that pleading.[8]  The Court granted ZYA's motion in part and denied it in part.  Specifically, the Court rejected ZYA's effort to dismiss Arex's willful infringement counterclaim, concluding that "ZYA's acknowledgement of Arex's cease-and-desist letter, combined with its inaction when faced with information about the alleged patent infringement, is sufficient at the pleading stage."[9]  The Court granted ZYA's motion with respect to unenforceability, concluding that Arex did not sufficiently identify the specific individuals associated with the alleged inequitable conduct and that Arex did not describe with particularity how ZYA carried out the alleged inequitable conduct.[10]

In June 2023, Arex filed a Second Amended Counterclaim.[11]  In that pleading, Arex amended its unenforceability counterclaim to list individuals involved with ZYA's alleged inequitable conduct, and it added factual allegations regarding the circumstances surrounding ZYA's alleged inequitable conduct.[12]  ZYA moved to dismiss that pleading.[13]  The Court denied ZYA's motion with respect to the counterclaim for willful infringement of Arex's patent,[14] but it granted ZYA's motion to dismiss Arex's counterclaims for declaratory judgment of invalidity and unenforceability of ZYA's patent and inequitable conduct because the Court concluded that Arex lacked standing to make those claims.[15]

---

[6]     *See* generally Countercl. [ECF No. 29].

[7]     First Am. Countercl. [ECF No. 40].

[8]     *See generally* Pl.'s Mot. to Dismiss First Am. Countercl. [ECF No. 44].

[9]     *See* Order re Def.'s Mot. to Dismiss Complaint [ECF No. 63] 14.

[10]    *Id.* at 14-15.

[11]    Second Am. Countercl. [ECF No. 66].

[12]    *Id.* at ¶¶ 57 & 64–85.

[13]    Pl.'s Mot. to Dismiss Second Am. Countercl. [ECF No. 69].

[14]    *See* Order re Pl.'s Mot. to Dismiss Second Am. Countercl. and Def.'s Mot. for Leave to File Third Am. Countercl. (the "Prior Order") [ECF No. 97] 6.

[15]    *Id.* at 3.

In July 2023, Arex moved for leave to file another counterclaim that includes trademark and antitrust claims for relief.[16]  The Court granted that motion.[17]

In February 2024, Arex filed the operative Third Amended Counterclaim.  Arex now asserts the following seven claims for relief against ZYA and Counterdefendants:

- infringement of the D'634 Patent;[18]
- willful infringement of the D'634 Patent;[19]
- fraudulent transfer, Cal. Civ. Code §§ 3439, *et seq.*;[20]
- attempted monopolization, 15 U.S.C. § 2;[21]
- violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200) (the "UCL");[22]
- false advertising, Cal. Bus. & Prof. Code § 17500;[23] and
- violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[24]

Both Motions are fully briefed.

### III.  LEGAL STANDARD

#### A.    Motion to Strike

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  "Federal courts have frequently exercised their discretion under Rule 12(f) [of the Federal Rules of Civil Procedure] to strike pleadings that exceed the scope of a permitted amendment or do not comply with the

---

[16]    Def.'s Mot. for Leave to File Third-Am. Counter-Compl. (the "Motion for Leave") [ECF No. 71].

[17]    Prior Order 9.

[18]    Third Amended Counterclaim ¶¶ 23–36.

[19]    *Id.* at ¶¶ 37–50.

[20]    *Id.* at ¶¶ 51–77.

[21]    *Id.* at ¶¶ 78–84.

[22]    *Id.* at ¶¶ 85–90.

[23]    *Id.* at ¶¶ 91–98.

[24]    *Id.* at ¶¶ 99–110.

court's instructions pursuant to an order granting leave to amend." *Terry v. City of Pasadena*, 2019 WL 2895192, at \*8 (C.D. Cal. Apr. 22, 2019) (collecting cases).  A court has discretion to determine whether to strike matter from a pleading.  *See Fantasy*, 984 F.2d at 1528.

## B.    Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

## C.    Rule 15(a)—Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Therefore, leave to amend should be granted unless the court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## IV.  ANALYSIS

ZYA and Counterdefendants seek two types of relief in their respective Motions—
they ask the Court to *strike* portions of Arex's Third Amended Complaint, and they seek
the *dismissal* of some of the claims for relief within that pleading.  The Court analyzes
each aspect of the Motions in turn.

### A.    Motions to Strike

ZYA and Counterdefendants move to strike Exhibits A–P to the Third Amended
Counterclaim,[25] as well as any portion of that pleading that cites those Exhibits, because
Arex did not file those Exhibits in a timely fashion.[26]  In its Prior Order, the Court
directed Arex to file an amended pleading "no later than February 23, 2024[.]"[27]  Arex
filed its Third Amended Counterclaim on February 23, 2024, but it did not file the
Exhibits until six days later.[28]

In response to ZYA's Motion to Strike, the paralegal for Arex's counsel submitted
a declaration to explain that she filed the Third Amended Counterclaim on February 23,
2024, but she "inadvertently" omitted the Exhibits.[29]  The paralegal testified that she
contacted the court clerk for guidance; the court clerk instructed the paralegal to file the
Exhibits separately and to link them to the Amended Counterclaim on the docket; and the
paralegal followed the court clerk's instructions and filed the Exhibits "immediately
thereafter."[30]

The Court concludes that Arex has sufficiently explained why the Exhibits were
filed after the Amended Counterclaim, and ZYA and Counterdefendants have made
insufficient showings that they were prejudiced by the six-day delay in receiving the
Exhibits.  Accordingly, the Motions to Strike are **DENIED**.[31]

---

[25]    Exs. to Third Amended Counterclaim (the "Exhibits") [ECF No. 103].

[26]    *See generally* Motion.

[27]    Prior Order 9.

[28]    *See* Exhibits.

[29]    Decl. of Sharon Shepard in Supp. of the ZYA Motion Opposition (the "Shepard
Declaration") [ECF No. 109-1] ¶¶ 3 & 4.

[30]    *Id.* at ¶ 5.

[31]    Because the Court denies the Motions to Strike, it disregards Counterdefendants'
arguments regarding the inadequate or untimely service of the Exhibits.  *See* Counterdefendants'
Motion 18:26–19:16 (arguing that service of process must be quashed because the Exhibits were
not served with the Third Amended Counterclaim).

**B.      Counterdefendants' Motion to Dismiss—Alter Ego Theories**

Counterdefendants move to dismiss the Third Amended Counterclaim either because the Court lacks personal jurisdiction over Counterdefendants or because the Third Amended Counterclaim fails to state a claim against Counterdefendants.[32]  Both of the arguments that Counterdefendants make turn on Arex's alter ego allegations, so the Court considers those arguments together.

When deciding whether a corporation is the alter ego of its owner or director—or of another corporation—the court applies the law of the forum state.  *See Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993).  "California recognizes alter ego liability where two conditions are met:  First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.'"  *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 363 n.9 (1977)).

**1.      Unity of Interest**

To decide whether a unity of interest exists, a court considers a variety of factors, including the following:

- whether there is evidence of the "[c]omingling of funds and other assets to other than corporate uses";
- "the treatment by an individual of the assets of the corporation as his own";
- "the failure to obtain authority to issue stock or to subscribe to the same";
- "the holding out by an individual that he is personally liable for the debts of the corporation";
- "the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities";
- "sole ownership of all of the stock in a corporation by one individual or the members of a family";
- "the use of the same office or business location";
- "the failure to adequately capitalize a corporation;"
- "the total absence of corporate assets, and undercapitalization";
- "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation";

---

[32]      *See generally* Counterdefendants' Motion.

- "the disregard of legal formalities and the failure to maintain arm's length relationships among related entities"; and
- "and the formation and use of a corporation to transfer to it the existing liability of another person or entity."

*Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (1962).

Arex has not provided evidence or allegations to support a theory that a unity of interest exists between ZYA and Counterdefendants. Most of Arex's alter ego allegations are mere boilerplate statements, such as the allegation that "there existed and now exists a unity of interest and ownership between ZYA and each of the Alter Ego Counter-Defendants."[33] To the extent that Arex pleads any specific facts regarding the relationship between ZYA and Counterdefendants, Arex alleges only that "Wang is the principal for ZYA and ZHL," that "ZHL owns the VLAND trademark in the European Union" and Australia, and that, because ZYA transferred the VLAND trademark to ZHL, ZHL also "owns the VLAND Trademarks in the United States."[34] Those allegations suggest only that there is *some* relationship between ZYA and Counterdefendants; the allegations do not suggest that there is a *unity* of interest between ZYA and Counterdefendants.

### 2.    Fraud or Injustice

When a court decides whether upholding the corporate form would promote fraud or injustice, "[t]he issue is not so much whether, for all purposes, the corporation is the alter ego of its stockholders or officers, nor whether the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300–01 (1985) (quoting *Kohn v. Kohn*, 95 Cal. App. 2d 708, 718 (1950)). Rather, the issue is "whether in the particular case presented . . . justice and equity can best be accomplished and fraud and unfairness defeated" by disregarding the corporate form. *Id.* at 301. "The purpose of the doctrine is . . . to afford [a creditor] protection, where some conduct *amounting to bad faith* makes it inequitable . . . for the equitable owner of a corporation to hide behind its corporate veil." *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992) (emphasis in original) (quoting *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842 (1962)).

In an effort to establish that upholding the corporate form would result in fraud or injustice, Arex points to ZYA's transfer of the VLAND trademark to ZHL, as well as the

---

[33]    *See* Third Amended Counterclaim ¶ 9(b).

[34]    *Id.* at ¶ 9(g).

possibility that ZYA will be judgment-proof because of the transfer.[35]  As discussed below, Arex has not plausibly alleged that the transfer of the VLAND trademark was fraudulent. Nor has Arex pleaded any facts to establish that a claimant's potential inability to recover on a possible judgment, standing alone, warrants disregarding the corporate form.  The Court thus concludes that Arex has failed to allege adequately that Counterdefendants are alter egos of ZYA.  And, because Arex relies on its alter ego theories to establish that the Court has personal jurisdiction over Counterdefendants, the Court also concludes that it lacks personal jurisdiction over Counterdefendants.

For those reasons, Counterdefendants' Motion is **GRANTED**.  Arex's claims against Counterdefendants are **DISMISSED for lack of jurisdiction**.

## C.    ZYA's Motion to Dismiss Counterclaims III–VII

ZYA moves to dismiss Counterclaims III through VII for failure to state claims against ZYA.[36]  The Court considers each Counterclaim in turn.

### 1.    Counterclaim III—Fraudulent Transfer

Pursuant to Cal. Civ. Code § 3439.04, a transfer of property is voidable as to present and future creditors "if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" and "without receiving a reasonably equivalent value in exchange for the transfer or obligation."  Cal. Civ. Code § 3439.04.  The creditor must also show that the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or that the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  *Id.* (alterations omitted).

According to Arex, ZYA transferred the VLAND trademark in order to defraud Arex because ZYA falsely claimed that, in December 2022, ZYA "stopped selling [its] headlights" in response to Arex's cease-and-desist letters, in which Arex demanded that

---

[35]    *See* Counterdefendants' Motion Opposition.

[36]    Counterdefendants also move to dismiss Counterclaims III through VII for the reasons expressed in ZYA's Motion because the allegations against Counterdefendants depend upon the allegations against ZYA.  *See* Counterdefendants' Motion 18:13–24.  ZYA does not move to dismiss Arex's Counterclaims I and II against ZYA.  Those claims for relief remain for resolution.

ZYA stop selling headlights.[37]  In reality, though, Arex alleges that ZYA transferred the VLAND trademark to ZHL and continued to sell headlights.[38]

Those allegations are insufficient to support a claim for relief for fraudulent transfer.  Arex apparently asks the Court to infer—based solely upon the fact that ZYA continued to sell headlights after December 2022—that ZYA transferred the VLAND trademark so as to avoid paying Arex a large judgment in this case.  But ZYA's continued sale of headlights does not establish that ZYA intended to defraud Arex, and there is no factual basis upon which the Court could conclude that ZYA transferred the trademark because ZYA believed that it would incur debts against Arex that ZYA would be unable to pay.  And even if the Court could infer that ZYA transferred the VLAND trademark with the intent to defraud Arex, Arex has not alleged facts that demonstrate that ZYA failed to "receiv[e] a reasonably equivalent value" in exchange for the transfer.  Accordingly, Arex's fraudulent transfer counterclaim is **DISMISSED**.

### 2.       Counterclaim IV—*Walker Process* Fraud

The so-called *Noerr-Pennington* doctrine is "a judicially created exception to the application of the antitrust laws" based upon the First Amendment.  *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254-55 (9th Cir. 1982); (referring to *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)).  Under the *Noerr-Pennington* doctrine, "[t]hose who petition [the] government for redress are generally immune from antitrust liability." *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

A party cannot invoke the protection of the *Noerr-Pennington* doctrine if that party engaged in "*Walker Process* fraud," meaning that the party obtained a patent fraudulently and then used "that patent to exclude a competitor from the market through infringement suits."  *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ies, Inc.*, 552 F.3d 1033, 1045 (9th Cir. 2009) (referring to *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)).

To establish *Walker Process* fraud, an antitrust claimant must show:  (1) that "the asserted patent was obtained by knowingly and willfully misrepresenting the facts to the" U.S. Patent and Trademark Office (the "USPTO"); (2) that "the party enforcing the patent was aware of the fraud when bringing suit"; (3) "independent and clear evidence of deceptive intent"; (4) "reliance, i.e., that the patent would not have issued but for the

---

[37]        Third Amended Counterclaim ¶ 55.

[38]        *Id.* at ¶ 69.

misrepresentation or omission"; and (5) "the necessary additional elements of an underlying violation of the antitrust laws." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1172-73 (E.D. Cal. 2009), *aff'd*, 655 F.3d 1337 (Fed. Cir. 2011).  A finding of *Walker Process* fraud "requires high threshold showings" of the elements, "supported by clear and convincing evidence." *Westlake Servs., LLC v. Credit Acceptance Corp.*, 2017 WL 8948263, at *5 (C.D. Cal. Dec. 28, 2017).  It "is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone v. Redev. Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988).

Arex alleges that ZYA committed *Walker Process* fraud because "individuals associated with the filing and prosecution of the '796 patent . . . intentionally and willfully misled the USPTO by omitting material information and using stolen USPTO agent identity which if known would have resulted in the USPTO not allowing the patent."[39] Specifically, Arex asserts that ZYA falsely represented that USPTO patent practitioner Jie Yang prosecuted the patent application, but Yang has denied that fact.[40]  Arex also alleges that, despite "[k]nowing that Patent '796 was obtained by fraud and the commission of inequitable conduct before the USPTO, ZYA nonetheless commenced the present action against Arex based on its '796 patent" and that, in doing so, ZYA "acted with specific intent to unlawfully monopolize the relevant markets."[41]

Those conclusory allegations are insufficient to support a claim for *Walker Process* fraud.  For example, in *Kaiser* the Ninth Circuit concluded that a plaintiff pleaded enough evidence to raise a question of fact regarding *Walker Process* fraud when the plaintiff alleged that an attorney omitted critical information from a patent application. *See Kaiser*, 552 F.3d at 1050.  But there, the plaintiff also alleged various other circumstances that the omission was "not inadvertent." *Id.* at 1051.  The attorney made other omissions that were unlikely to have been inadvertent, he included the same information in patent applications to which that information was not "fatal to the patentability," and he made statements suggesting that he knew that the omitted information would have resulted in the denial of the patent. *Id.*

Arex has not alleged any similar facts here.  While Arex contends that ZYA obtained the D'796 Patent fraudulently, the only fact that Arex alleges in support of that contention is that ZYA falsely indicated that Yang prosecuted the patent.  That allegation, standing alone, does not demonstrate that ZYA intended to make a false representation.  Nor is that allegation sufficient to establish that ZYA was aware that

---

[39]     *Id.* at ¶ 79.

[40]     *Id.* at ¶¶ 18 & 19.

[41]     *Id.* at ¶¶ 80 & 82.

Yang did not prosecute the patent when ZYA filed this case, that ZYA would not have received the patent but for the misrepresentation, or that ZYA has been using the patent "to exclude [Arex] from the market" for headlights.  *See Kaiser*, 552 F.3d at 1045.

Accordingly, ZYA's Motion is **GRANTED** with respect to this counterclaim.

### 3.    Counterclaim V—UCL

Arex concedes that its UCL counterclaim is insufficiently pleaded, and it "acknowledges that the fifth cause of action for violation of California's Unfair Competition Law requires more specificity."[42]  Accordingly, Arex's UCL counterclaim is **DISMISSED**.

### 4.    Counterclaim VI—False Advertising

Under California law, it is unlawful for any person, corporation, or employee with intent "to induce the public to enter into any obligation relating thereto, to make or disseminate . . . before the public in this state, . . . in any newspaper or other publication . . . or in any other manner or means whatever . . . any statement, concerning that real or personal property or those services . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus & Prof. Code § 17500.

The basis for Arex's false advertising counterclaim is somewhat unclear.  In its Opposition to ZYA's Motion, Arex suggests that its false advertising counterclaim rests upon the assertion that ZYA falsely "represent[ed] to consumers that [ZYA's] product is patented."[43]  According to Arex, it is false or misleading for ZYA to state that its products are protected by patents because ZYA obtained its patents through fraud or by copying Arex's designs.[44]

The Court concludes that Arex has failed to state a false advertising counterclaim. As Arex concedes, ZYA *does* have patents for its products.[45]  It is thus not false for ZYA to state that its products are patented.  And Arex provides no authority—nor can the Court locate any—to support the theory that a patent owner misleads consumers by

---

[42]    ZYA Motion Opposition 1:15-16.

[43]    *Id.* at 14:13.

[44]    Third Amended Counterclaim ¶¶ 93, 95, & 96.

[45]    *See id.* at ¶ 17.

referring to its patents if those patents were fraudulently obtained.[46]  Accordingly, Arex's false advertising counterclaim is **DISMISSED**.

> ### 5.    Counterclaim VII—Lanham Act

To state a claim for false advertising under the Lanham Act, a plaintiff must allege that "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2002).  A Lanham Act false advertising claim is subject to a heightened pleading standard under Rule 9(b).  *See Waste & Compliance Mgmt., Inc. v. Stericycle, Inc.*, 2017 WL 4358145, at *2 (S.D. Cal. Oct. 2, 2017).

Arex's Lanham Act allegations are virtually identical to its California law false advertising allegations.  As explained above, Arex has not plausibly alleged that ZYA made false or misleading statements about its products.  Accordingly, the Motion is **GRANTED** with respect to this claim.

## D.    Leave to Amend

Arex insists that it can plead additional facts in a potential Fourth Amended Counterclaim, and it requests leave to do so.  With respect to Counterdefendants—against whom Arex has not previously been given the chance to amend his claims—the Court grants Arex leave to amend Counterclaims I and II.

With respect to ZYA, however, Arex has already had three chances to allege its Counterclaims, and ZYA would suffer prejudice if Arex were allowed to amend its pleading a fourth time.  A district court has "particularly broad" discretion to deny leave to amend when the plaintiff has previously amended its pleading.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted).  Accordingly, the Court concludes that leave to amend is not warranted, and Counterclaims III through VII are **DISMISSED without leave to amend**.  Because Arex's claims against Counterdefendants depend upon Arex's allegations against ZYA, the Court also

---

[46]    *See generally* ZYA Motion Opposition.

**DISMISSES without leave to amend** Counterclaims III through VII as alleged against Counterdefendants.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      ZYA's and Counterdefendants' respective Motions to Strike are **DENIED**.

2.      Counterdefendants' Motion to Dismiss is **GRANTED**.  Specifically,

     a.      Arex's Counterclaims I and II against Counterdefendants are **DISMISSED with leave to amend**; and

     b.      Arex's Counterclaims III through VII against Counterdefendants are **DISMISSED without leave to amend**.

3.      ZYA's Motion to Dismiss is **GRANTED**.  Arex's Counterclaims III through VII against ZYA are **DISMISSED without leave to amend**.

4.      Arex is **DIRECTED** to file an amended pleading, if at all, no later than October 31, 2025.  If Arex chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Third Amended Counterclaim that provides the Court with a redline version that shows the amendments.  If Arex fails to file its amended pleading by October 31, 2025, then the Court will **DISMISS** Counterclaims I and II, as alleged against Counterdefendants ZHL and Wang, **with prejudice**.  If Arex files a timely Fourth Amended Counterclaim, then Counterdefendants are **DIRECTED** to file their respective responses thereto no later than November 21, 2025.

5.      ZYA is **DIRECTED** to file its response to Arex's operative pleading no later than November 21, 2025.

     **IT IS SO ORDERED.**

Dated:  October 10, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE