Alexander Chen [SBN 245798]
alexc@inhouseco.com
Theodore S. Lee [SBN 281475]
tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone: 949-250-1555
Facsimile: 714-882-7770

Attorneys for Defendant and Counterclaimant,
Arex Industries, Inc

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD.**, a Chinese company,<br><br>        Plaintiff,<br><br>v.<br><br>**AREX INDUSTRIES, INC.**, a California company,<br><br>        Defendant. | Case No. 2:22-cv-01692-JWH-PD<br><br>**FOURTH AMENDED COUNTERCLAIMS FOR:**<br><br>1.  **INFRINGEMENT OF US PATENT NO. D909,634; and**<br>2.  **WILLFUL INFRINGEMENT** |
| **AREX INDUSTRIES, INC.**, a California company,<br><br>        Counterclaimant,<br><br>v.<br><br>**ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD.**, a Chinese company,<br><br>        Counterdefendant. | |

Defendant and Counterclaimant Arex Industries, Inc. ("Arex") presents the following allegations and facts in support of these Counterclaims and demands a jury trial on all causes of action stated herein against the named Counterclaim Defendant as follows:

## JURISDICTION AND VENUE

1. This is a civil action for infringement of a patent.

2. This court has subject matter jurisdiction over these claims pursuant to the patent laws of the United States under 28 U.S.C. §§ 1331 and 1338(a).

3. Venue properly lies within the Central District of California pursuant to 28 U.S.C. § 1391(b), (c), and (d).

## PARTIES

4. Arex is a corporation registered and existing under the laws of the State of California, having its principal place of business at 5300 Irwindale Ave, Irwindale, California 91706.

5. Upon information and belief, Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd. ("ZYA") is a company organized and existing under the laws of China, having its principal place of business in Wenzhou, China. ZYA has consented to the jurisdiction of this Court by initiating this lawsuit.

6. Upon information and belief, ZYA is a China-based manufacturer, online distributor, and retailer of auto and motorcycle parts and accessories, and ZYA was the owner of the United States registered trademark for VLAND for various lights for vehicles.

7. Upon information and belief, Zhejiang Hongguan Lighting Technology Co., Ltd. ("ZHL") is a company organized and existing under the laws of China, having its principal place of business in Zhejiang, China. ZHL is a China-based manufacturer, online distributor, and retailer of automobile parts and accessories, and ZHL is currently the owner of the United States registered trademarks for VLAND for various lights for vehicles.

8. Upon information and belief, Yonghuo Wang ("Wang") is an individual having a citizenship of China residing in Guangzhou, China. Wang is the principal of both ZYA and ZHL.

## ALTER EGO ALLEGATIONS

9. At all relevant times, Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd. ("ZYA"), Zhejiang Hongguan Lighting Technology Co., Ltd. ("ZHL"), and Yonghuo Wang ("Wang") operated as a single business enterprise in the manufacture, branding, and sale of "VLAND" automotive headlights including:

### I. Unity of Interest

(a) **Common ownership and control.** Wang executed the December 2, 2022 assignments transferring the U.S. VLAND trademarks from ZYA to ZHL by signing for both the assignor (ZYA) and assignee (ZHL), reflecting unified control over both sides of the transaction (**Ex.A** ). No consideration appears on the face of the recorded assignments transferring the VLAND marks from ZYA to ZHL (**Ex. A**);

(b) **Shared identity in public-facing materials**. ZHL's public website at yzheng.com displays the VLAND mark while the same page's "About Us" section identifies ZYA as the company, and the page footer identifies ZHL—holding out both entities as the same business to the marketplace (**Ex. B**);

(c) **Commingled operations/continuity of business.** After ZYA's sworn statement that it stopped selling headlights in December 2021 and had no active Amazon store, the same VLAND F-150 headlights continued to be offered and sold through the "VLAND" Amazon Store and multiple "VLAND-" branded websites, using the same brand, listings, and channels (**Exs. C-H**), and Arex successfully placed and received an order in July 2023 (**Ex. I**). The business thus continued seamlessly under the "VLAND" enterprise notwithstanding ZYA's purported cessation;

(d) **Transfer of core assets to affiliate mid-litigation without arm's-length safeguards**. In the midst of this action, ZYA transferred all U.S. VLAND trademarks to ZHL (**Ex. A**). No arm's-length documentation or contemporaneous consideration is disclosed. The transfer was executed by Wang on both sides, with no contemporaneous documentation of consideration or corporate approvals, further evidencing disregard of corporate formalities and unity of ownership.

(e) **Failure to maintain arm's-length intercompany relations and corporate separateness.** On information and belief, ZYA and ZHL lack arm's-length intercompany agreements governing brand use, U.S. sales, or financial flows; share personnel and resources for U.S. e-commerce operations; and do not maintain separate, independent books and records for the "VLAND" U.S. sales channels, as reflected in the interchangeable public presentation (**Ex. B**) and continuous unified marketplace presence (**Exs. C-H**).

(f) **Single business enterprise / unified brand assets.** The VLAND trademarks, catalogs, product imagery, and storefronts are used interchangeably across ZYA and ZHL to market the accused headlights to U.S. customers, evidencing that the entities function as one business unit servicing the same customers through the same channels (**Exs. B-H**);

(g) **Undercapitalization / asset-light operating shell.** Following the transfer of all VLAND marks to ZHL, ZYA continued to litigate this dispute while holding itself out as having ceased sales and lacking active U.S. retail channels, rendering ZYA asset-light relative to the ongoing "VLAND" business operated through ZHL (**Exs. A, C-H**);

(h) **Use of the corporate form as a conduit.** The foregoing facts show ZYA and ZHL are used interchangeably as conduits to conduct the same "VLAND" headlight business under common control, rather than as separate, arm's-length enterprises (**Exs. A–H**);

(i) **Same office, Same facilities, Same address**. ZYA and ZHL operated from the same facility and used the same shipping/warehouse address at no. 185 Fengdu 2nd road north Luo Feng industrial area Tangxia Ruian Zhejiang, China.

(j) **Commingling of funds / shared payment rails.** ZYA and ZHL processed U.S. VLAND sales through the same Amazon seller accounts and payout bank account, without intercompany invoicing or settlement, including Amazon accounts VLAND US, VLAND-STORE, YUANZHENG US.

(k) **Failure to maintain minutes/records / confusion of records.** On information and belief, there no board minutes or resolutions approve the transfer between ZYA to ZHL; the companies keep consolidated U.S. sales records without entity-level ledgers.

(l) **Common Ownership structure between Wang, ZYA and ZHL.** On information and belief, Wang owns/controls all (or controlling) equity in ZYA and ZHL," or "same family group ownership.

(m) **Manufacturer–seller continuity is evidenced by the product itself.** On October 16, 2024, Arex purchased the accused headlight set via the "VLAND US" Amazon storefront (Order #114-8376969-9889838), and the order was shipped to Coto de Caza, California 92679-5000. The shipping carton and product packaging bear "Zhejiang Hongguan Illumination Technology Co., Ltd." (a transliteration/English-name variant of Zhejiang Hongguan Lighting Technology Co., Ltd.), along with VLAND branding, evidencing that the accused "VLAND" headlights sold through the VLAND storefronts were manufactured and packaged by the ZHL enterprise. This confirms that the accused headlights sold through the VLAND storefronts were manufactured and packaged by the ZHL enterprise, even as ZYA disclaimed ongoing sales. True and correct photos of the received packaging and the Amazon order detail are attached as **Exs. J** (photos), **K** (invoice/summary), and **L** (shipment/label/tracking).

Below are excerpts of photos of the purchased VLAND headlight bearing ZHL company's marking:







(n) Taken together, these facts demonstrate that ZYA, ZHL, and Wang share such a unity of interest and ownership that their separate personalities have ceased to exist. Adherence to the corporate form would sanction fraud and promote injustice by allowing Wang and his controlled entities to evade liability while continuing the same infringing business under the VLAND brand.

## II. FRAUD OR INJUSTICE

10. Adherence to the fiction of separate corporate existence would sanction fraud and promote inequitable results in this case because (i) ZYA's mid-litigation transfer of all VLAND trademarks and logistic assets to its commonly controlled affiliate ZHL (executed by Wang for both sides) stripped ZYA of its core U.S. brand assets, (ii) the same accused VLAND headlights continued to be sold to U.S. consumers through the same storefronts and websites after ZYA's asserted cessation

(Exs. C–H, I), and (iii) the October 16, 2024 shipment to Coto de Caza, California (Exs. J–L) shows the enterprise continued accused U.S. sales under the affiliate—leaving ZYA asset-light while operations and revenue continued through ZHL.

11. Several badges of fraud are present:

(a) **Timing of the transfer:** ZYA transferred its U.S. VLAND trademarks to ZHL on December 2, 2022, in the midst of this litigation (**Ex. A**).

(b) **Insider transaction:** The assignments were executed by Wang on behalf of both ZYA and ZHL (**Ex. A**).

(c) **Lack of consideration:** No consideration appears on the face of the recorded assignments (**Ex. A**).

(d) **Retention of benefit / continuity of business:** Despite ZYA's sworn statement that it ceased sales in December 2021, the same VLAND headlights continued to be sold through Amazon and VLAND-branded websites, and Arex successfully purchased them in July 2023 and October 2024 (**Exs. I–L**).

(e) **Concealment / inconsistent statements:** ZYA represented in discovery responses that it had no active Amazon store and had stopped selling headlights, yet the accused products remained available and were shipped into California with ZHL's name on the packaging (**Exs. J–L**).

(f) **Stripping of assets:** By transferring its core U.S. trademarks to ZHL, ZYA rendered itself asset-light while continuing to litigate this dispute, leaving it judgment-proof relative to the ongoing VLAND business (**Exs. A, C–H**).

### III. PERSONAL JURISDICTION OVER ZHL AND WANG
### (ALTER-EGO / SPECIFIC JURISDICTION)

12. Because ZHL and Wang are alter egos of ZYA, their conduct is attributable to ZYA for jurisdictional purposes. Through the unified "VLAND" enterprise, they purposefully directed the manufacture, offer for sale, and sale of the accused headlights into the United States, including this District: on October 16, 2024, the accused "VLAND" headlights were purchased from the VLAND US Amazon storefront (Order #114-8376969-9889838) and shipped to Coto de Caza, California 92679-

5000; the packaging bears Zhejiang Hongguan Illumination Technology Co., Ltd. identification and VLAND branding (Exs. J–L). Arex's claims arise out of that forum-directed conduct, and exercising jurisdiction is reasonable. In the alternative, if the Court desires further detail, Arex requests limited jurisdictional discovery targeted to alter-ego factors (corporate records, intercompany agreements, seller/payment accounts, shared staffing) and leave to re-plead based on that discovery.

## IV. WILLFULNESS / ALTER-EGO LIABILITY.

13. Arex's willful-infringement allegations (Count II) likewise apply to ZHL and Wang under the alter-ego doctrine because, after notice of Arex's patent rights, the unified "VLAND" enterprise continued U.S. marketing and sales of the accused design through the same channels while shifting brand ownership to ZHL (Exs. N, C–H, I). The October 16, 2024 California shipment described above (Exs. J–L) further supports willfulness by evidencing continued sales into this forum post-notice.

## THE ASSERTED PATENT AND INFRINGMENT THEREOF

14. On February 2, 2021, the United States Patent and Trademark Office duly and legally issued United States Design Patent No. D909,634, entitled "Vehicle Headlight" ("the '634 Patent"). The patent's named inventor is Mizeng He. Arex is the assignee and owner of the entire right, title, and interest in and to the '634 Patent and as such is vested with the right to bring this suit for damages and other relief. A true and correct copy of the '634 Patent is attached hereto as **Exhibit M**.

15. ZYA's "VLAND LED headlights for Ford 150 2018-2020" (the "Accused Products") are copied from the '634 Patent and are listed on VLAND's website[1] and on Amazon.com[2]. A true and correct copy of ZYA's listings is attached hereto as **Exhibit N**.

## COUNT ONE

## INFRINGEMENT OF THE '634 PATENT BY ZYA

16. Arex re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

17. ZYA has knowledge of the design embodied in the '634 Patent in as early as February 2019 when Arex debuted its product, bearing the '634 Patent, in the US. ZYA has knowledge of its

---

[1] https://www.vland-official.com/products/vland-led-projector-headlights-for-ford-f150-2018-2020-without-sequential-turn-signal
[2] https://www.amazon.com/Upgraded-Headlights-Pickup-Assembly-YAA-F150-2042A/dp/B08PZ1N9V8/ref=sr_1_32?crid=1H58RM39S8QVC&dchild=1&key

infringement of the '634 Patent since at least December 2021, when counsel for ZYA contacted Arex's counsel in response to Arex's October 27, 2021, cease and desist letter to third party US E-Logistics Service Corp.

18. The '634 Patent has a single claim directed to the ornamental design for vehicle headlights as shown below:





19.     ZYA copied the design for its Accused Products from the design of the '634 Patent. A side-by-side comparison of the '634 Patent and an exemplary specimen of ZYA's headlight is shown below:

| Arex's<br>D909,634 Design Patent | ZYA's<br>headlight |
|---|---|
|  |  |
|  |  |

FOURTH AMENDED COUNTERCLAIMS



20. As depicted above, the headlight design of the Accused Product is the same or substantially the same as the headlight design of the '634 Patent. While both are designed as aftermarket lights to replace the original Ford 2018 headlight, ZYA copied the designs of Arex and made its own design to be so similar to Arex such that an ordinary observer would be so deceived by the substantial similarity between the designs.

21. Indeed, the '634 Patent is comprised of the following main ornamental features: (1) a single LED projector light with surrounding bezel (having a top horizontal lid, bottom horizontal lid,

and side lid displacing a backward pointing arrow) positioned to the top (headlight top main section), (2) triple horizontal LED bars with marginal spacing between each bars (headlight middle main section), (3) a single LED projector light with a surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow) positioned to the bottom (headlight lower main section), (4) a continuous LED bar wrapping and taping around the outer perimeter of the headlamp, and (5) an inner side lamp (parking light) adjacent and protruding horizontally to the triple horizontal LED bars.

22. Specifically, the '634 Patent contains a main middle section that has *prominent* triple horizontal LED bars with marginal spacing between each bar ("Triple LED Bars") that immediately draw the user's attention. These Triple LED Bars are the prominent design element, and are not disclosed in any of the prior art cited in the '634 Patent's prosecution history. The Accused Product also has aesthetically identical features comprising of the five ornamental features listed above and most importantly, the Triple LED Bars.

23. Except for the slight differences in the non-material respect of the appearance of the inner side lamp (5), the accused product bears identical features matching that of the '634 patent, most notably the Triple LED Bars and the two LED lights with reversed arrow bezels placed on the top and bottom of the Triple LED Bar. Given that the similarity between these points of novelty, such that the overall design of the '634 Patent and Accused Products are nearly identical, there is no doubt that ZYA's Accused Products infringe the '634 Patent. Giving such attention as a purchaser usually gives, an ordinary user would be so confused by the substantial similarity between the designs so as to be induced to purchase ZYA's product supposing it to be from Arex.

24. Arex has not granted a license or any other authorization to ZYA to make use, offer for sale, sell, or import headlights that embody the headlight design patented in the '634 Patent.

25. Arex alleges upon information and belief that, without authority, ZYA has infringed and continues to infringe the '634Patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '634Patent in violation of 35 U.S.C. § 271, including but not limited to the Accused Products.

26. ZYA's acts of infringement of the '634Patent was undertaken without authority, permission, or license from Arex. ZYA's infringement violates 35 U.S.C. § 271.

27. Arex is informed and believes that ZYA intentionally sells, ships, or otherwise causes to be delivered the Accused Products in the United States, with knowledge that they are designed to and do practice the infringing features of the '634 Patent.

28. Arex has been damaged in an amount to be proven at trial, but not less than $1,000,000, plus interest, attorney's fees, and costs as provided by law.

29. Arex is without an adequate remedy at law and has thus been irreparably harmed by these acts of infringement. Arex asserts upon information and belief that infringement of the asserted claims of the '634 Patent is continuous and ongoing unless and until ZYA is enjoined from further infringement by the Court.

## COUNT TWO

## WILLFUL INFRINGEMENT OF THE ASSERTED PATENT

30. Arex re-alleges and incorporates by reference each allegation in the preceding paragraphs as though fully set forth herein.

31. ZYA's infringement of the '634 Patent has been willful.

32. ZYA has had actual knowledge of the '634 Patent since as early as 2019 February and also at least as early as December 2021 when counsel for ZYA contacted Arex's counsel in response to Arex's October 27, 2021, letter to US E-Logistics Service Corp.

33. Accordingly, ZYA's continued marketing and sales evidence not only ZYA's pre-suit knowledge of the '634 Patent, but that ZYA's infringement of the '634 Patent has been, and continues to be, willful and deliberate, warranting treble damages.

34. Indeed, ZYA's sole possible defense to willfulness is that it has a valid design patent of its own. However, this defense is premised on fraud and foul play.

35. On information and belief, when ZYA filed its U.S. Design Patent D925,796 ("the '796 Patent") on July 21, 2020, it copied all of the key ornamental features of Arex's F150 headlight that are embodied in the '634 Patent. A true and correct copy of the '796 Patent is attached hereto as **Exhibit O**.

36. The F150 product embodied in the '634 Patent was introduced into US commerce as early as February 2019. It proved to be a tremendous success and received accolades from the industry and users alike.

37. On information and belief, eyeing the success of Arex's F150 headlight, ZYA devised a scheme by which it would (a) copy the designs, (b) make slight changes, (c) withhold key prior art that would show that the changes were not novel, and (d) proceed to obtain a patent by fraud and sell the products under the cover of a duly-issued patent.

38. Indeed, ZYA first obtained a copy of the F150 sample and copied its prominent key ornamental features including the features of (1) a single LED projector light with surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow) positioned to the top (headlight top main section), (2) triple horizontal LED bars with marginal spacing between each bars (headlight middle main section), (3) a single LED projector light with a surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow) positioned to the bottom (headlight lower main section), (4) a continuous LED bar wrapping and taping around the outer perimeter of the headlamp, and (5) an inner side lamp (parking light) adjacent and protruding horizontally to the triple horizontal LED bars.

39. After ZYA copied the prominent features, it made a marginal effort to distinguish their design from the '634 Patent by incorporating a grill-like bar covering the inner side lamp, a feature that was already disclosed in prior art, specifically, the 2018 Ford F-150 King Ranch Edition exterior halogen headlight ("King Ranch Light").

| King Ranch Light | ZYA's '796 |
|---|---|




40. ZYA purposely withheld the prior art of the King Ranch Light from the USPTO during the prosecution of the '796 Patent. Had the King Ranch Light prior art been disclosed to the USPTO, the Examiner would not have issued the '796 Patent, given that the only material difference between Arex's '634 Patent and ZYA's '796 Patent is the grill-like bar covering the inner side lamp, a feature that was already disclosed on the King Ranch Light.

41. ZYA filed its '796 Patent application as an expedited request, which requires a certification that the relevant agents and principals had conducted a thorough prior art search. Based on the attorney's certification of prior art search, only three (3) items of prior art were offered, none of which were the '634 Patent or the King Ranch Light. Despite the heightened requirement of self-certification of a thorough prior art search, ZYA still failed to disclose the King Ranch Light.

42. On information and belief, ZYA knew that it had obtained the '796 Patent improperly by copying the features of the '634 Patent and adding a grill-like bar covering the inner side lamp identical to the 2018 Ford King Ranch F150 headlight, and further failing to disclose the existence of the King Ranch Light prior art to the USPTO.ZYA's reliance on the '796 Patent as a defense to Arex's infringement claims so that they can continue to sell without consequences only makes their conduct even more egregious.

43. Therefore, Arex seeks to recover enhanced damages against for willfulness as authorized by law.

## PRAYER FOR RELIEF

WHEREFORE, Arex prays for relief and judgment as follows:

1. That ZYA take nothing by its complaint;

2. That the Court enter judgment against ZYA and in favor of Arex and that ZYA's claims be dismissed in their entirety, with prejudice;

3. That this Court determine that ZYA, ZHL, and Wang have infringed the '634 Patent;

4. That ZYA, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from infringement of the '634 Patent, including but not limited to any making, using, offering for sale, selling, or importing of unlicensed infringing products within the United States;

5. That ZHL, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from infringement of the '634 Patent, including but not limited to any making, using, offering for sale, selling, or importing of unlicensed infringing products within the United States;

6. That this Court permanently enjoin ZYA, ZHL, and Wang as well as their agents and employees from continuing their unlawful actions set forth herein;

7. Consequential and punitive damages;

8. Disgorgement of ZYA, ZHL and Wang's sales and profits;

9. Compensation for all damages caused by ZYA, ZHL, and Wang's infringement of the '634 Patent to be determined at trial;

10. A finding that this case is exceptional and awarding reasonable attorney's fees to Arex pursuant to 35 U.S.C. § 285;

11. A finding that this case is exceptional, thereby trebling the damages and awarding reasonable attorney's fees to Arex pursuant to 35 U.S.C. §§ 284 and 285;

12. Granting Arex pre-and post-judgment interest on its damages, together with all costs and expenses;

13. Finding ZYA, ZHL, and Wang's infringement of the '634 Patent to be willful and increasing damages up to three times the amount found or assessed by the jury;

14. Ordering that ZYA, ZHL, and Wang to deliver to Arex or destroy all infringing

1  products; and

2      15.    Granting Arex such other and further relief as the Court may deem just and proper.

DATED: December 5, 2025          **INHOUSE CO. LAW FIRM**

By: _____
    Alexander Chen, Esq.
    Theodore Lee, Esq.
    Attorneys for Defendant and Counterclaimant
    Arex Industries, Inc.



INHOUSE CO. LAW FIRM

**DEMAND FOR JURY TRIAL**

Defendant and Counter claimant thereby demands a trial by jury on all claims.

DATED: December 5 , 2025                                  **INHOUSE CO. LAW FIRM**

By: _____
   Alexander Chen, Esq.
   Theodore Lee, Esq.
   Attorneys for Defendant and Counterclaimant
   Arex Industries, Inc.

FOURTH AMENDED COUNTERCLAIMS