Alexander Chen [SBN 245798]
alexc@inhouseco.com
Theodore S. Lee [SBN 281475]
tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone:  949-250-1555
Facsimile:   714-882-7770

Attorneys for Defendant and Counterclaimant,
Arex Industries, Inc

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD.**, a Chinese company, <br><br> Plaintiff, <br><br> v. <br><br> **AREX INDUSTRIES, INC.**, a California company, <br><br> Defendant. | Case No. 2:22-cv-01692-JWH-PD <br><br> **NOTICE OF REVISIONS TO THIRD AMENDED COUNTERCLAIM** |
| **AREX INDUSTRIES, INC.**, a California company, <br><br> Counterclaimant, <br><br> v. <br><br> **ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD.**, a Chinese company, <br><br> Counterdefendant. | |

INHOUSE CO. LAW FIRM

Defendant and Counterclaimant Arex Industries, Inc. ("Arex") hereby submits the redline revisions to the Third Amended Counterclaim, attached hereto as **Exhibit A**.

DATED: December 5, 2025                    **INHOUSE CO. LAW FIRM**

By: _____
         Alexander Chen, Esq.
         Theodore Lee, Esq.
         Attorneys for Defendant and Counterclaimant
         Arex Industries, Inc.




INHOUSE CO. LAW FIRM

# Exhibit A

**NOTICE OF REVISIONS TO THIRD AMENDED COUNTERCLAIM**

Alexander Chen [SBN 245798]
alexc@inhouseco.com
~~Katja M. Grosch [SBN 266935]~~
~~kmg@inhouseco.com~~
Theodore S. Lee [SBN 281475]
tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone:  949-250-1555
Facsimile:  714-882-7770

Attorneys for Defendant and Counterclaimant,
Arex Industries, Inc

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ZHEJIANG YUANZHENG AUTO & MOTORCYCLE A**~~CCSS~~**ESSORIES CO., LTD.**, a Chinese company,<br><br>              Plaintiff,<br><br>v.<br><br>**AREX INDUSTRIES, INC.**, a California company,<br><br>Defendant. | Case No. 2:22-cv-01692-JWH-PD<br><br>~~THIRD~~ FOURTH AMENDED COUNTERCLAIMS FOR:<br><br>**1.  INFRINGEMENT OF US PATENT NO. D909,634; and**<br>**2.  WILLFUL INFRINGEMENT**~~;~~<br>~~3.  FRAUDULENT TRANSFER;~~<br>~~4.  WALKER PROCESS ANTITRUST VIOLATION;~~<br>~~5.  CALIFORNIA UNFAIR COMPETITION;~~<br>~~6.  CALIFORNIA FALSE ADVERTISING; and~~<br>~~7.  VIOLATION OF SECTION 43(a) of the LANHAM ACT~~ |
| **AREX INDUSTRIES, INC.**, a California company,<br><br>              Counterclaimaint,<br><br>v.<br><br>**ZHEJIANG YUANZHENG AUTO & MOTORCYCLE A**~~CCSS~~**ESSORIES CO., LTD.**, a Chinese company,<br><br>              Counterdefendant. | |

INHOUSE CO. LAW FIRM

1    Defendant and Counterclaimant Arex Industries, Inc. ("Arex") presents the following

2   allegations and facts in support of these Counterclaims and demands a jury trial on all causes of action

3   stated herein against the named Counterclaim Defendant as follows:

### JURISDICTION AND VENUE

4

5    1.    This is a civil action for infringement of a patent, ~~and for a declaration of~~

6   ~~noninfringement and invalidity of a patent, arising under the patent laws of the United States, including,~~

7   ~~without limitation, 35 U.S.C. § 100, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et*~~

8   ~~*seq.*~~

9    2.    This court has subject matter jurisdiction over these claims pursuant to the patent laws of

10  the United States under 28 U.S.C. §§ 1331 and 1338(a)~~, and the Declaratory Judgment Act, 28 U.S.C.~~

11  ~~§§ 2201-2202.~~

12   3.    Venue properly lies within the Central District of California pursuant to 28 U.S.C.

13  § 1391(b), (c), and (d).

### PARTIES

14

15   4.    Arex is a corporation registered and existing under the laws of the State of California,

16  having its principal place of business at 5300 Irwindale Ave, Irwindale, California 91706.

17   5.    Upon information and belief, Zhejiang Yuanzheng Auto & Motorcycle Accessories

18  Co., Ltd. ("ZYA") is a company organized and existing under the laws of China, having its principal

19  place of business in Wenzhou, China. ZYA has consented to the jurisdiction of this Court by initiating

20  this lawsuit.

21   6.    Upon information and belief, ZYA is a China-based manufacturer, online distributor,

22  and retailer of auto and motorcycle parts and accessories, and ZYA wa~~s~~ the owner of the United

23  State~~sd~~ registered trademark for VLAND for various lights for vehicles.

24   7.    Upon information and belief, Zhejiang Hongguan~~g~~ Lighting Technology Co., Ltd.

25  ("ZHL") is a company organized and existing under the laws of China, having its principal place of

26  business in Zhejiang, China. ZHL is a China-based manufacturer, online distributor, and retailer of

27  automobile parts and accessories, and ZHL is currently the owner of the United State~~sd~~ registered

28  trademarks for VLAND for various lights for vehicles.

INHOUSE CO. LAW FIRM

8.      Upon information and belief, Yonghuo Wang ("Wang") is an individual having a citizenship of China residing in Guangzhou, China. Wang is the principal of both ZYA and ZHL.

**ALTER EGO ALLEGATIONS**

9.   ~~Arex is informed and believes and thereon alleges that the individual and entity named as Counter-Defendants herein, including but not limited to Wang and ZHL (hereinafter collectively referred to as the "Alter Ego Counter-Defendants"), and each of them, were at all times relevant herein the alter egos ZYA by the reason of the following:~~At all relevant times, Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd. ("ZYA"), Zhejiang Hongguan Lighting Technology Co., Ltd. ("ZHL"), and Yonghuo Wang ("Wang") operated as a single business enterprise in the manufacture, branding, and sale of "VLAND" automotive headlights including:

~~9.~~   **I. Unity of Interest**

(a) ~~Arex is informed and believes and thereon alleges that ZYA, at all times herein was mentioned, dominated, influenced, and controlled by each of the Alter Ego Counter-Defendants and the officers thereof as well as the business, property, and affairs of each said entities;~~**Common ownership and control.** Wang executed the December 2, 2022 assignments transferring the U.S. VLAND trademarks from ZYA to ZHL by signing for both the assignor (ZYA) and assignee (ZHL), reflecting unified control over both sides of the transaction (**Ex.A** ). No consideration appears on the face of the recorded assignments transferring the VLAND marks from ZYA to ZHL (**Ex. A**).

(b) **Shared identity in public-facing materials.** ZHL's public website at yzheng.com displays the VLAND mark while the same page's "About Us" section identifies ZYA as the company, and the page footer identifies ZHL—holding out both entities as the same business to the marketplace (**Ex. B**).

(c) **Commingled operations/continuity of business.** After ZYA's sworn statement that it stopped selling headlights in December 2021 and had no active Amazon store, the same VLAND F-150 headlights continued to be offered and sold through the "VLAND" Amazon Store and multiple "VLAND-" branded websites, using the same brand, listings, and channels (**Exs. C-H**), and Arex successfully placed and received an order in July 2023

3

INHOUSE CO. LAW FIRM

1  **(Ex. I)**. The business thus continued seamlessly under the "VLAND" enterprise
2  notwithstanding ZYA's purported cessation;

3  (d) **Transfer of core assets to affiliate mid-litigation without arm's-length safeguards.** In
4  the midst of this action, ZYA transferred all U.S. VLAND trademarks to ZHL (**Ex. A**). No
5  arm's-length documentation or contemporaneous consideration is disclosed.  The transfer
6  was executed by Wang on both sides, with no contemporaneous documentation of
7  consideration or corporate approvals, further evidencing disregard of corporate formalities
8  and unity of ownership.

9  (e) **Failure to maintain arm's-length intercompany relations and corporate separateness.**
10  On information and belief, ZYA and ZHL lack arm's-length intercompany agreements
11  governing brand use, U.S. sales, or financial flows; share personnel and resources for U.S.
12  e-commerce operations; and do not maintain separate, independent books and records for
13  the "VLAND" U.S. sales channels, as reflected in the interchangeable public presentation
14  (**Ex. B**) and continuous unified marketplace presence (**Exs. C-H**).

15  (f) **Single business enterprise / unified brand assets.** The VLAND trademarks, catalogs,
16  product imagery, and storefronts are used interchangeably across ZYA and ZHL to market
17  the accused headlights to U.S. customers, evidencing that the entities function as one
18  business unit servicing the same customers through the same channels (**Exs. B-H**);

19  (g) **Undercapitalization / asset-light operating shell.** Following the transfer of all VLAND
20  marks to ZHL, ZYA continued to litigate this dispute while holding itself out as having
21  ceased sales and lacking active U.S. retail channels, rendering ZYA asset-light relative to
22  the ongoing "VLAND" business operated through ZHL (**Exs. A, C-H**);

23  (h) **Use of the corporate form as a conduit.** The foregoing facts show ZYA and ZHL are
24  used interchangeably as conduits to conduct the same "VLAND" headlight business under
25  common control, rather than as separate, arm's-length enterprises (**Exs. A–H**);

26  (i) **Same office, Same facilities, Same address**. ZYA and ZHL operated from the same
27  facility and used the same shipping/warehouse address at no. 185 Fengdu 2nd road north
28  Luo Feng industrial area Tangxia Ruian Zhejiang, China.

INHOUSE CO. LAW FIRM

4

(j)  **Commingling of funds / shared payment rails.**  ZYA and ZHL processed U.S. VLAND sales through the same Amazon seller accounts and payout bank account, without intercompany invoicing or settlement, including Aamazon accounts VLAND US, VLAND-STORE, YUANZHENG US.

(k)  **Failure to maintain minutes/records / confusion of records.** On information and belief, there no board minutes or resolutions approve the transfer between ZYA to ZHL; the companies keep consolidated U.S. sales records without entity-level ledgers.

(l)  **Common Ownership structure between Wang, ZYA and ZHL.**  On information and belief, Wang owns/controls all (or controlling) equity in ZYA and ZHL," or "same family group ownership.

(m) **Manufacturer–seller continuity is evidenced by the product itself.** On October 16, 2024, Arex purchased the accused headlight set via the "VLAND US" Amazon storefront (Order #114-8376969-9889838), and the order was shipped to Coto de Caza, California 92679-5000. The shipping carton and product packaging bear "Zhejiang Hongguan Illumination Technology Co., Ltd." (a transliteration/English-name variant of Zhejiang Hongguan Lighting Technology Co., Ltd.), along with VLAND branding, evidencing that the accused "VLAND" headlights sold through the VLAND storefronts were manufactured and packaged by the ZHL enterprise. This confirms that the accused headlights sold through the VLAND storefronts were manufactured and packaged by the ZHL enterprise, even as ZYA disclaimed ongoing sales. True and correct photos of the received packaging and the Amazon order detail are attached as **Exs. J** (photos), **K** (invoice/summary), and **L** (shipment/label/tracking).

Below are excerpts of photos of the purchased VLANDland headlight bearing ZHL company's marking:

THIRD FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM



Formatted: Font: Times New Roman, No underline, Font color:



Formatted: Font: Times New Roman, No underline, Font color:

THIRD FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

(n) Taken together, these facts demonstrate that ZYA, ZHL, and Wang share such a unity of interest and ownership that their separate personalities have ceased to exist. Adherence to the corporate form would sanction fraud and promote injustice by allowing Wang and his controlled entities to evade liability while continuing the same infringing business under the VLAND brand.

**II. FRAUD OR INJUSTICE**

10.    Adherence to the fiction of separate corporate existence would sanction fraud and promote inequitable results in this case because (i) ZYA's mid-litigation transfer of all VLAND trademarks and logistic assets to its commonly controlled affiliate ZHL (executed by Wang for both sides) stripped ZYA of its core U.S. brand assets, (ii) the same accused VLAND headlights continued to be sold to U.S. consumers through the same storefronts and websites after ZYA's asserted cessation

THIRD FOURTH AMENDED COUNTERCLAIMS

(Exs. C–H, I), and (iii) the October 16, 2024 shipment to Coto de Caza, California (Exs. J–L) shows the enterprise continued accused U.S. sales under the affiliate—leaving ZYA asset-light while operations and revenue continued through ZHL.

11.  Several badges of fraud are present:

(a)  **Timing of the transfer:** ZYA transferred its U.S. VLAND trademarks to ZHL on December 2, 2022, in the midst of this litigation **(Ex. A).**

(b)  **Insider transaction:** The assignments were executed by Wang on behalf of both ZYA and ZHL **(Ex. A).**

(c)  **Lack of consideration:** No consideration appears on the face of the recorded assignments **(Ex. A).**

(d)  **Retention of benefit / continuity of business:** Despite ZYA's sworn statement that it ceased sales in December 2021, the same VLAND headlights continued to be sold through Amazon and VLAND-branded websites, and Arex successfully purchased them in July 2023 and October 2024 **(Exs. I–L).**

(e)  **Concealment / inconsistent statements:** ZYA represented in discovery responses that it had no active Amazon store and had stopped selling headlights, yet the accused products remained available and were shipped into California with ZHL's name on the packaging **(Exs. J–L).**

(f)  **Stripping of assets:** By transferring its core U.S. trademarks to ZHL, ZYA rendered itself asset-light while continuing to litigate this dispute, leaving it judgment-proof relative to the ongoing VLAND business **(Exs. A, C–H).**

### III. PERSONAL JURISDICTION OVER ZHL AND WANG (ALTER-EGO / SPECIFIC JURISDICTION).

12.  Because ZHL and Wang are alter egos of ZYA, their conduct is attributable to ZYA for jurisdictional purposes. Through the unified "VLAND" enterprise, they purposefully directed the manufacture, offer for sale, and sale of the accused headlights into the United States, including this District: on October 16, 2024, the accused "VLAND" headlights were purchased from the VLAND US Amazon storefront (Order #114-8376969-9889838) and shipped to Coto de Caza, California 92679-

~~THIRD~~ FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM

5000; the packaging bears Zhejiang Hongguan Illumination Technology Co., Ltd. identification and VLAND branding (Exs. J–L). Arex's claims arise out of that forum-directed conduct, and exercising jurisdiction is reasonable.  In the alternative, if the Court desires further detail, Arex requests limited jurisdictional discovery targeted to alter-ego factors (corporate records, intercompany agreements, seller/payment accounts, shared staffing) and leave to re-plead based on that discovery.

## IV. WILLFULNESS / ALTER-EGO LIABILITY.

(a) 13.       Arex's willful-infringement allegations (Count II) likewise apply to ZHL and Wang under the alter-ego doctrine because, after notice of Arex's patent rights, the unified "VLAND" enterprise continued U.S. marketing and sales of the accused design through the same channels while shifting brand ownership to ZHL (Exs. N, C–H, I). The October 16, 2024 California shipment described above (Exs. J–L) further supports willfulness by evidencing continued sales into this forum post-notice.

(b) Arex is informed and believes and thereon alleges that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between ZYA and each of the Alter Ego Counter-Defendants; the individual and separateness of ZYA and each of the Alter Ego Counter-Defendants have ceased;

(c) Arex is informed and believes and thereon alleges that, at all times herein mentioned, ZYA has been and continues to be a mere shell and naked framework which the Alter Ego Defendants uses as a conduit for the conduct of their personal business, property, and affairs;

(d) Arex is informed and believes and thereon alleges that, at all times herein mentioned, ZYA was created and continued pursuant to a fraudulent plan, scheme, and/or device conceived and operated by the Alter Ego Counter-Defendants, whereby the income, revenue, and profit of ZYA were diverted by the Alter Ego Counter-Defendants to themselves;

(e) Arex is informed and believes and thereon alleges that, at all times herein mentioned, ZYA was organized by the Alter Ego Counter-Defendants as a device to avoid liability and for the purpose of substituting financially irresponsible entities in the place and stead of ZYA;

9

INHOUSE CO. LAW FIRM

1  (f)  By virtue of the foregoing, adherence to the fiction of the separate corporate existence
2       of ZYA would, under the circumstances, sanction a fraud and promote injustice in that
3       Arex would be unable to realize any judgment in its favor.
4  (g)  Additionally, upon information and belief, Wang is the principal for both ZYA and
5       ZHL. ZHL owns the VLAND trademark in the European Union; ZHL owns the
6       VLAND trademark in Australia; and after the transfer by ZYA to ZHL, ZHL owns the
7       VLAND Trademarks in the United States as well.
8  (h)  Attached **Exhibit I** is a true and copy of a copy of the website yzheng.com , which is
9       the website of ZHL showing in the same webpage bearing "Vland" trademark, while in
10      the "About US" section stating that the company is "ZYA" and then at the bottom of
11      the webpage stating that the company is ZHL.

12              **THE ASSERTED PATENT AND INFRINGEMENT THEREOF**

13      10.14.  On February 2, 2021, the United States Patent and Trademark Office duly and legally
14  issued United States Design Patent No. D909,634, entitled "Vehicle Headlight" ("the '634 Patent").
15  The patent's named inventor is Mizeng He. Arex is the assignee and owner of the entire right, title, and
16  interest in and to the '634 Patent and as such is vested with the right to bring this suit for damages and
17  other relief. A true and correct copy of the '634 Patent is attached hereto as **Exhibit MA**.

18      11.15.  ZYA's "VLAND LED headlights for Ford 150 2018-2020" (the "Accused Products")
19  are copied from the '634 Patent and are listed on VLAND's website[1] and on Amazon.com[2]. A true and
20  correct copy of ZYA's listings is attached hereto as **Exhibit NB**.

21        COUNTER-DEFENDANTS' ATTEMPT TO AVOID LIABILITY
22                AND FRAUDULENT TRANSFER
23      12.   At the commencement of this lawsuit, ZYA was the owner of
24  several United States registered trademarks for VLAND, including U.S.
25  Reg. Nos. 6302000, 6301997, 5781201, and 5065813 (the "VLAND

26

27  _____
    [1] https://www.vland-official.com/products/vland-led-projector-headlights-for-ford-f150-2018-2020-without-sequential-turn-signal
28  [2] https://www.amazon.com/Upgraded-Headlights-Pickup-Assembly-YAA-F150-2042A/dp/B08PZ1N9V8/ref=sr_1_32?crid=1H58RM39S8QVC&dchild=1&key

                                    10

INHOUSE CO. LAW FIRM

Trademarks"), all of which relates to motor vehicle products and/or accessories.

13.   On or about December 12, 2022, in the midst of this current action, ZYA transferred through assignment the entire interest in the VLAND Trademarks from ZYA to ZHL. Each of the assignments for the VLAND Trademarks was recorded with the USPTO and a true and correct copy of each is attached hereto as **Exhibit G**.

14.   After the fraudulent transfer of ZYA's VLAND Trademarks and potentially other assets to ZHL, ZYA has taken the position that ZYA has only sold the Accused Product up to November of 2021 and has since not sold any Accused Products.

15.   However, a search for VLAND and the Accused Products shows that the Accused Products are still being sold under the VLAND Trademarks on Amazon.com.

**FRAUDULENT ACQUISITION OF PATENTS FROM**
**THE USPTO AND INJURY TO COMPETITION**

16.   Incredibly, ZYA has fraudulently obtained patents from the United States Patent and Trademark Office ("USPTO"). In counsel's years of experience and practice in the field of intellectual property, counsel has never seen such blatant fraud before the USPTO. The level of the fraud and audacity of ZYA is unprecedented.

17.   To date, ZYA has been successfully in its scheme in fraudulently obtaining patents, including but not limited to U.S. Patent Number D925,796.

18.   Specifically, ZYA's D925,796 Patent indicated that a USPTO patent practitioner Jie Yang ("Yang"), Registration Number 77,665, prosecuted the patent application.

19.   Yang, however, has denied under oath that she prosecuted the patent application or authorized the use of her name and registration number for the prosecution of the D925,796 patent.

THIRD FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM

20.    ZYA did not, in its D925,796 patent application, disclose the fact that Ms. Yang was not involved in the prosecution of the patent, nor did she not authorized the use of her name and registration for the prosecution of the patent.

21.    Accordingly, ZYA made representations to the USPTO that were material to the patentability of its then pending patent application which it knew to be false. The materially false representations and omissions were intended to induce and did induce reliance by the patent examiners charged with determining whether to grant ZYA's patent claims.

22.    Indeed, but for ZYA's materially false statements and omissions, the D925,796 patent would not have issued.

**COUNT ONE**

**INFRINGEMENT OF THE '634 PATENT BY ZYA**

23. 16.   Arex re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

24. 17.   ZYA has knowledge of the design embodied in the '634 Patent in as early as February 2019 when Arex debuted its product, bearing the '634 Patent, in the US. ZYA has knowledge of its infringement of the '634 Patent since at least December 2021, when counsel for ZYA contacted Arex's counsel in response to Arex's October 27, 2021, cease and desist letter to third party US E-Logistics Service Corp.

25. 18.   The '634 Patent has a single claim directed to the ornamental design for vehicle headlights as shown below:

| Arex's D909,634 Design Patent |
|---|

INHOUSE CO. LAW FIRM

12



26. 19.  ZYA copied the design for its Accused Products from the design of the '634 Patent. A side-by-side comparison of the '634 Patent and an exemplary specimen of ZYA's headlight is shown below:

| Arex's D909,634 Design Patent | ZYA's headlight |
|---|---|



14



27.20.  As depicted above, the headlight design of the Accused Product is the same or substantially the same as the headlight design of the '634 Patent. While both are designed as aftermarket lights to replace the original Ford 2018 headlight, ZYA copied the designs of Arex and made its own design to be so similar to Arex such that an ordinary observer would be so deceived by the substantial similarity between the designs.

28.21.  Indeed, the '634 Patent is comprised of the following main ornamental features: (1) a single LED projector light with surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow) positioned to the top (headlight top main section), (2) triple horizontal LED bars with marginal spacing between each bars (headlight middle main section), (3) a single LED projector light with a surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow) positioned to the bottom (headlight lower main section), (4) a continuous LED bar wrapping and taping around the outer perimeter of the headlamp, and (5) an inner side lamp (parking light) adjacent and protruding horizontally to the triple horizontal LED bars.

29.22.  Specifically, the '634 Patent contains a main middle section that has *prominent* triple horizontal LED bars with marginal spacing between each bar ("Triple LED Bars") that immediately draw the user's attention. These Triple LED Bars are the prominent design element, and are not disclosed in any of the prior art cited in the '634 Patent's prosecution history. The Accused Product also has aesthetically identical features comprising of the five ornamental features listed above and most importantly, the Triple LED Bars.

INHOUSE CO. LAW FIRM

30.23.  Except for the slight differences in the non-material respect of the appearance of the inner side lamp (5), the accused product bears identical features matching that of the '634 patent, most notably the Triple LED Bars and the two LED lights with reversed arrow bezels placed on the top and bottom of the Triple LED Bar. Given that the similarity between these points of novelty, such that the overall design of the '634 Patent and Accused Products are nearly identical, there is no doubt that ZYA's Accused Products infringe the '634 Patent. Giving such attention as a purchaser usually gives, an ordinary user would be so confused by the substantial similarity between the designs so as to be induced to purchase ZYA's product supposing it to be from Arex.

31.24.  Arex has not granted a license or any other authorization to ZYA to make use, offer for sale, sell, or import headlights that embody the headlight design patented in the '634 Patent.

32.25.  Arex alleges upon information and belief that, without authority, ZYA has infringed and continues to infringe the '634Patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '634Patent in violation of 35 U.S.C. § 271, including but not limited to the Accused Products.

33.26.  ZYA's acts of infringement of the '634Patent was undertaken without authority, permission, or license from Arex. ZYA's infringement violates 35 U.S.C. § 271.

34.27.  Arex is informed and believes that ZYA intentionally sells, ships, or otherwise causes to be delivered the Accused Products in the United States, with knowledge that they are designed to and do practice the infringing features of the '634 Patent.

35.28.  Arex has been damaged in an amount to be proven at trial, but not less than $1,000,000, plus interest, attorney's fees, and costs as provided by law.

36.29.  Arex is without an adequate remedy at law and has thus been irreparably harmed by these acts of infringement. Arex asserts upon information and belief that infringement of the asserted claims of the '634 Patent is continuous and ongoing unless and until ZYA is enjoined from further infringement by the Court.

**COUNT TWO**

**WILLFUL INFRINGEMENT OF THE ASSERTED PATENT**

16

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

37.30. Arex re-alleges and incorporates by reference each allegation in the preceding paragraphs as though fully set forth herein.

38.31. ZYA's infringement of the '634 Patent has been willful.

39.32. ZYA has had actual knowledge of the '634 Patent since as early as 2019 February and also at least as early as December 2021 when counsel for ZYA contacted Arex's counsel in response to Arex's October 27, 2021, letter to US E-Logistics Service Corp.

40.33. Accordingly, ZYA's continued marketing and sales evidence not only ZYA's pre-suit knowledge of the '634 Patent, but that ZYA's infringement of the '634 Patent has been, and continues to be, willful and deliberate, warranting treble damages.

41.34. Indeed, ZYA's sole possible defense to willfulness is that it has a valid design patent of its own. However, this defense is premised on fraud and foul play.

42.35. On information and belief, when ZYA filed its U.S. Design Patent D925,796 ("the '796 Patent") on July 21, 2020, it copied all of the key ornamental features of Arex's F150 headlight that are embodied in the '634 Patent. A true and correct copy of the '796 Patent is attached hereto as **Exhibit O.**

43.36. The F150 product embodied in the '634 Patent was introduced into US commerce as early as February 2019. It proved to be a tremendous success and received accolades from the industry and users alike.

44.37. On information and belief, eyeing the success of Arex's F150 headlight, ZYA devised a scheme by which it would (a) copy the designs, (b) make slight changes, (c) withhold key prior art that would show that the changes were not novel, and (d4) proceed to obtain a patent by fraud and sell the products under the cover of a duly-issued patent.

45.38. Indeed, ZYA first obtained a copy of the F150 sample and copied its prominent key ornamental features including the features of (1) a single LED projector light with surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow) positioned to the top (headlight top main section), (2) triple horizontal LED bars with marginal spacing between each bars (headlight middle main section), (3) a single LED projector light with a surrounding bezel (having a top horizontal lid, bottom horizontal lid, and side lid displacing a backward pointing

17

arrow) positioned to the bottom (headlight lower main section), (4) a continuous LED bar wrapping and taping around the outer perimeter of the headlamp, and (5) an inner side lamp (parking light) adjacent and protruding horizontally to the triple horizontal LED bars.

39.    After ZYA copied the prominent features, it made a marginal effort to distinguish their design from the '634 Patent by incorporating a grill-like bar covering the inner side lamp, a feature that was already disclosed in prior art, specifically, the 2018 Ford F-150 King Ranch Edition exterior halogen headlight ("King Ranch Light").

46.

| King Ranch Light | ZYA's '796 |
|---|---|
|  |  |

47.40.  ZYA purposely withheld the prior art of the King Ranch Light from the USPTO during the prosecution of the '796 Patent. Had the King Ranch Light prior art been disclosed to the USPTO, the Examiner would not have issued the '796 Patent, given that the only material difference between Arex's '634 Patent and ZYA's '796 Patent is the grill-like bar covering the inner side lamp, a feature that was already disclosed on the King Ranch Light.

48.41.  ZYA filed its '796 Patent application as an expedited request, which requires a certification that the relevant agents and principals had conducted a thorough prior art search. Based on the attorney's certification of prior art search, only three (3) items of prior art were offered, none of

18

THIRD FOURTH AMENDED COUNTERCLAIMS

which were the '634 Patent or the King Ranch Light. Despite the heightened requirement of self-certification of a thorough prior art search, ZYA still failed to disclose the King Ranch Light.

~~49.~~42.  On information and belief, ZYA knew that it had obtained the '796 Patent improperly by copying the features of the '634 Patent and adding a grill-like bar covering the inner side lamp identical to the 2018 Ford King Ranch F150 headlight, and further failing to disclose the existence of the King Ranch Light prior art to the USPTO.ZYA's reliance on the '796 Patent as a defense to Arex's infringement claims so that they can continue to sell without consequences only makes their conduct even more egregious.

~~50.~~43.  Therefore, Arex seeks to recover enhanced damages against for willfulness as authorized by law.

### ~~COUNT THREE~~

### ~~FRAUDULENT TRANSFER~~

### ~~(Cal. Civil Code § 3439 et seq.)~~

~~51.    Arex re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.~~

~~52.    On January 6, 2022, ZYA sent a letter to Arex demanding that it stop attempting to enforce its patent rights against ZYA.~~

~~53.    On March 14, 2022, ZYA filed the instant suit alleging various harms as a result of Arex's patent enforcement efforts.~~

~~54.    On May 13, 2022, ZYA filed a motion for preliminary injunction, which included the admission that ZYA is the owner of the registered trademark "VLAND". The motion further stated that VLAND has suffered, and will continue to suffer, irreparable harm as a result of Arex's alleged interference.~~

~~55.    On April 21, 2023, ZYA's verified discovery responses state that "[p]laintiff has no active stores on Amazon.com. Plaintiff is only a manufacturer of the alleged accused products." In the same response, ZYA states that "[o]ur company's financial sales decreased after we received Defendant's cease and desist letter. Our company could not sell any headlights in 2022 due to the cease~~

INHOUSE CO. LAW FIRM

19

~~THIRD~~ FOURTH AMENDED COUNTERCLAIMS

and desist letter. Our Company also stopped selling the headlights in December 2021 due to the warehouse holding the products after receiving Arex's cease and desist letter."

23    Subject to and notwithstanding its General and Specific Objections, Plaintiff responds as
24    follows: Our company's financial sales decreased after we received Defendant's cease and desist
25    letter. Our company could not sell any headlights in 2022 due to the cease and desist letter. Our
26    Company also stopped selling the headlights in December 2021 due to the warehouse holding the
27    products after receiving Arex's cease and desist letter.
28

**Formatted:** Font: Not Bold

56. It went on to state that it has only sold 308 of the accused products in 2021.

Subject to and notwithstanding its General and Specific Objections, Plaintiff responds as follows: Refer to sales data in the March 20, 2023 production. Plaintiff sold 368 ACCUSED PRODUCTS in the year of 2021. Plaintiff's profit for each of the Accused Product is ￥503.01 (RMB).

**Formatted:** Font: Not Bold

57.    Yet as of the time of this complaint, the very same VLAND F150 light is available for sale in Amazon's Vland Store, Vlandus.com, Vland-USA.com, Vland-official.com, Vlandshop.com, and Vlandfactory.com.

58.    Attached **Exhibit J** is a true and correct copy of the website Amazon's Vland Store showing it selling the accused product as of July 3, 2023.

59.    Attached **Exhibit K** is a true and correct copy of the website Vlandus.Com showing it selling the accused product as of July 3, 2023.

60.    Attached **Exhibit L** is a true and correct copy of the website Vland-USA.Com showing it selling the accused product as of July 3, 2023.

61.    Attached **Exhibit M** is a true and correct copy of the website Vland-Official.com showing it selling the accused product as of July 3, 2023.

62.    Attached **Exhibit N** is a true and correct copy of the website Vlandshop.com showing it selling the accused product as of July 3, 2023.

THIRD FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM

63.    Attached **Exhibit O** is a true and correct copy of the website Vlanddfactory.Com showing it selling the accused product as of July 3, 2023.

64.    In fact, as of July 3, 2023, Vlandfactory.Com states clearly state it is operated and own by ZYA:



> **Formatted:** Font: Not Bold

65.    On July 3, 2023, Arex placed an order for the Accused Product, and it was indeed processed and tracking number generated:



> **Formatted:** Font: Not Bold

66.    Attached as **Exhibit P** is a true copy of the order that was placed for the Accused Product on July 2, 2023, which has been processed and shipped.

67.    ZYA's preliminary injunction filed in May of 2022 when it already stopped selling VLAND F150 headlights in December of 2021?

21

THIRD FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM

68.    Why are the VLAND F150 headlights still for sale as of the day of this complaint on all major eCommerce site if ZYA stopped selling them in December of 2021?

69.    ZYA has since discovered that ZYA transferred all of its VLAND marks to ZHL in December 2022, which has the exact same ownership as ZYA.

| Mark | Serial Number | Previous Owner | Current Owner | Assignment Date |
|---|---|---|---|---|
| VLAND | 88486095 | Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd limited company (ltd.) CHINA | ZHEJIANG HONGGUAN LIGHTING TECHNOLOGY CO., LTD. LIMITED COMPANY (LTD.) CHINA | 12/2/2022 |
| VLAND | 88483414 | Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd limited company (ltd.) CHINA | ZHEJIANG HONGGUAN LIGHTING TECHNOLOGY CO., LTD. LIMITED COMPANY (LTD.) CHINA | 12/2/2022 |
| VLAND | 88196972 | Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd limited company (ltd.) CHINA | ZHEJIANG HONGGUAN LIGHTING TECHNOLOGY CO., LTD. LIMITED COMPANY (LTD.) CHINA | 12/2/2022 |
| VLAND | 86834961 | Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd limited company (ltd.) CHINA | ZHEJIANG HONGGUAN LIGHTING TECHNOLOGY CO., LTD. LIMITED COMPANY | 12/2/2022 |

Formatted: Font: Not Bold

Formatted: Font: Not Bold

Formatted: Font: Not Bold

Formatted: Font: Not Bold

INHOUSE CO. LAW FIRM

22

THIRD FOURTH AMENDED COUNTERCLAIMS

| | | | (LTD.) CHINA | |
|---|---|---|---|---|
| | | | | |

70.    Each assignment was signed by none other the Wang on behalf of ZYA and on behalf of ZHL:

THIS AGREEMENT shall take effect from 2nd day of December, 2022

IN WITNESS WHEREOF the parties hereto have caused their respective authorized representatives to execute this Agreement on the day and year first written above.

ASSIGNOR:                          ASSIGNEE:
**ZHEJIANG YUANZHENG AUTO &**      **ZHEJIANG HONGGUAN LIGHTING**
**MOTORCYCLE ACCESSORIES CO.,**    **TECHNOLOGY CO., LTD.**
**LTD**

Signed by: _Wong Yong hao_         Signed by: _Wang, Yong huo_
Name: Wang, Yenghuo                Name: Wang, Yenghuo
Title: Principal                   Title: Principal

Formatted: Font: Not Bold

71. This fraudulent transfers permits the people behind ZYA to continue to sell the Accused Products via ZHL, who was not initially named in this lawsuit. ZYA claims that it has sustained damage and could not sell any VLAND F150 because of Arex's cease and desist letter, but this is a farce.

72. ZYA and ZHL's shell game is poorly disguised and cannot be permitted to stand.

73. Specifically, ZYA's Vland trademarks and other assets were transferred by and among the Alter Ego Defendants with fraudulent intent to hinder, delay, or defraud Arex (actual fraud).

74. Alternatively, upon information and belief, the transfers by and among the Alter Ego Defendants were made for less than reasonably equivalent value (constructive fraud).

75. These fraudulent transfers were a substantial factor in causing harm to Arex. Due to the improper transfer of ZYA's trademarks and other assets into the names of the Alter Ego Defendants, ZYA has cut off its liability herein and made itself judgment-proof. Without this cause of action, all of ZYA's assets will beyond Arex's reach by the time this case concludes.

76. Arex seeks avoidance of the transfers, judgment against the transferees for the value of the assets transferred, that the Counter-defendants post an undertaking in the amount of the value of the

THIRD FOURTH AMENDED COUNTERCLAIMS

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

1  transferred assets, attachment, preliminary and permanent injunction against further disposition or

2  transfer of assets, appointment of a receiver, execution on the transferred assets or their proceeds if

3  disposed of, and/or any other and further relief the court deems appropriate.

4      77. Arex further seeks consequential and punitive damages against these Counter-defendants as

5  the transfers were made with malicious intent in an effort to avoid liability for ZYA's patent

6  infringement.

7  **COUNT FOUR**

8  **ATTEMPTED MONOPOLIZATION (15 U.S.C § 2) WALKER PROCESS SHERMAN ACT**

9  **VIOLATION**

10     78.    Arex re-alleges and incorporates by reference each and every allegation in the preceding

11 paragraphs as though fully set forth herein.

12     79. As detailed with particularity in paragraphs 69-104 of these Counterclaims, the '796 patent is

13 unenforceable because individuals associated with the filing and prosecution of the '796 patent,

14 including Yu Chen, Xiaopeng Liao, and Wang, acting as agents and/or with knowledge of ZYA

15 intentionally and willfully misled the USPTO by omitting material information and using stolen USPTO

16 agent identity which if known would have resulted in the USPTO not allowing the patent.

17     80. Knowing that Patent '796  was obtained by fraud and the commission of inequitable conduct

18 before the USPTO, ZYA nonetheless commenced the present action against Arex based on its '796

19 patent.

20     81. Such conduct constitutes a knowing, willful, and intentional attempt to enforce patent

21 procured by fraud and to improperly maintain and/or obtain monopoly power in the relevant market in

22 the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. The relevant market

23 consists of sellers of Ford 150 headlight having (1) a single LED projector light with surrounding bezel

24 (having a top horizonal lid, bottom horizontal lid, and side lid displacing a backward pointing arrow)

25 positioned to the top (headlight top main section), (2) triple horizontal LED bars with marginal spacing

26 between each bar (headlight middle main section), (3) a single LED projector light with a surrounding

27 bezel (having a top horizonal lid, bottom horizontal lid, and side lid displacing a backward pointing

28 arrow) positioned to the bottom (headlight lower main section), (4) a continuous LED bar wrapping and

taping around the outer perimeter of the headlamp, (5) an inner side lamp (parking light) adjacent and protruding horizontally to the triple horizontal LED bars, and (6) a grill-like bar covering the inner side lamp.

82. ZYA has acted with specific intent to unlawfully monopolize the relevant markets, and has a dangerous probability of achieving monopoly power in the relevant market as evidenced by the anticompetitive conduct alleged herein, and without legitimate business justification.

83. As a direct and proximate result of ZYA's anticompetitive conduct alleged heretofore, competition in the relevant markets has been, and will continue to be, injured to the detriment of consumers who will be subject to reduced choice, retarded quality in terms of product attributes.

84. As a direct and proximate result of ZYA's anticompetitive conduct alleged herein, Arex has been and continues to be injured in its business and property.

**COUNT FIVE**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code § 17200 Against All Counter-defendants)**

85. Arex re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

86. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition", including any "unlawful, unfair, and fraudulent business act or practice". Cal. Bus. & Prof. Code § 17200.

87. Counter-defendants' actions set forth herein constitute intentional business acts and practices that are unlawful, unfair, and fraudulent, including Counter-defendants' unreasonable harassment by filing this frivolous lawsuit against Arex.

88. As demonstrated above, Counter-defendants violated the UCL by knowingly and willfully committing fraud upon the USPTO in prosecuting their patent using a stolen identity and made false or misleading statements regarding the validity of their patent in connection sales of their products as well as the demand letter sent to Arex, ultimately leading to this lawsuit.

89. As demonstrated above, Counter-defendants violated the UCL by knowingly and willfully committing fraud upon the USPTO in prosecuting their patent using a stolen identity and enforcing such

INHOUSE CO. LAW FIRM

patent through at least the demand letter and the institution of this lawsuit. This conduct is a violation of Sherman Act Section 2, which constitutes both unlawful and unfair business practices.

90. As a direct and proximate result of Counter-defendants' acts of unfair competition, Counter-defendants have wrongfully harmed Arex. Counter-defendants must therefore disgorge all profits from the above conduct and further should be ordered to provide full restitution to Arex.

### COUNT SIX

### FALSE ADVERTISING

### (Cal. Bus. & Prof. Code § 17500 Against All Counter-defendants)

91. Arex re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

92. Section 17500 of California's Business and Professions Code protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. This Section makes it unlawful:

> for any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . before the public in this state, . . . in any newspaper or other publication . . . or in any other manner or means whatever . . . any statement, concerning that real or personal property or those services . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .
> Cal. Bus. & Prof. Code § 17500.

93. Counter-defendants knowingly and willfully committed fraud upon the USPTO in prosecuting their patent and made false or misleading statements regarding the validity of their patent in connection with the advertising and sale of their products.

94. Specifically, Counter-defendants, on at least one location on the point-of-sale web page, advertised that the Accused Product has a valid design patent.

95. Attached as **Exhibit H** is a true and correct copy of the VLAND website selling the subject F150 headlight dated June 29, 2023, touting it having valid US design patent:

INHOUSE CO. LAW FIRM

26

THIRD FOURTH AMENDED COUNTERCLAIMS



INHOUSE CO. LAW FIRM

**Formatted:** Font: Not Bold

**Formatted:** Font: Not Bold

96. The statements in this advertisement are untrue and misleading and Counter-defendants knew, or by the exercise of reasonable care should have known, that this statement was untrue and misleading.

97. A violation of Section 17500 is a misdemeanor, punishable by fine or imprisonment. Injunctive relief and restitution are also available under the UCL. (§ 17535).

98. Accordingly, Counter-defendants must disgorge all profits from the above conduct and should be ordered to provide full restitution to Arex.

**COUNT SEVEN**

**VIOLATION OF SECTION 43(a) of the LANHAM ACT**

99.    Arex re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

100.    Section 43(a) of the Lanham Act is designed to protect both consumers as well as competitors. Section 43(a) of the Lanham Act provides, in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which—
...
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial

27

1    activities, shall be liable in a civil action by any person who believes that he or she is

2    likely to be damaged by such act.

3    15 U.S.C. §1125(a).

4    101.    The elements for a false advertising claim under Section 43(a) are: (1) a false statement

5    of fact by the defendant in a commercial advertisement about its own or another's product; (2) the

6    statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

7    deception is material, in that it is likely to influence the consumer's purchasing decisions; (4) the

8    defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is

9    likely to be injured as a result of the false statement, either by a direct diversion of sales from itself to

10    defendant or by a lessening of the good will associated with its products. *Southland Sod Farms v. Stover*

11    *Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

12    102.    Counter-defendants knowingly and willfully committed fraud upon the USPTO in

13    prosecuting their patent and made false or misleading statements regarding the validity of their patent in

14    connection with the advertising and sale of their products.

15    103.    Specifically, Counter-Defendant on at least one location on the point-of-sale web page

16    would advertise that For F150 headlight which is the subject of the lawsuit has valid design patent.

17    104.    Attached as **Exhibit H** is a true and correct copy of the VLAND website selling the

18    subject F150 headlight dated June 29, 2023, touting it having valid US design patent.

19    105.    The statements in the advertising are simply untrue or misleading and Counter-

20    defendants knew, or by the exercise of reasonable care should have known, that this statement is untrue

21    and misleading.

22    106.    The statement actually deceived or has the tendency to deceive a substantial segment of

23    its audience.

24    107.    The deception is material, in that it is likely to influence the consumer's purchasing

25    decision.

26    108.    Counter-defendants caused their false statements to enter interstate commerce.

27

28

INHOUSE CO. LAW FIRM

28

THIRD FOURTH AMENDED COUNTERCLAIMS

109.   Arex has been or is likely to be injured as a result of the false statement, either by a direct diversion of sales from itself to Counter-defendants or by a lessening of the good will associated with its products.

110.   Arex is thus entitled to injunctive relief and to recover, subject to the principles of equity, Counter-defendants' profits, damages, and costs of suit.  The court may treble any of these damages and, in exceptional cases, may award reasonable attorney fees to the prevailing party. 15 U.S.C. §§ 1116 and 1117(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Arex prays for relief and judgment as follows:

1.     That ZYA take nothing by its complaint;

2.     That the Court enter judgment against ZYA and in favor of Arex and that ZYA's claims be dismissed in their entirety, with prejudice;

3.     That this Court determine that ZYA, ZHL, and Wang have infringed the '634 Patent;

4.     That ZYA, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from infringement of the '634 Patent, including but not limited to any making, using, offering for sale, selling, or importing of unlicensed infringing products within the United States;

5.     That ZHL, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from infringement of the '634 Patent, including but not limited to any making, using, offering for sale, selling, or importing of unlicensed infringing products within the United States;

6.     That this Court permanently enjoin ZYA, ZHL, and Wang as well as their agents and employees from continuing their unlawful actions set forth herein;

7.     That this Court void the fraudulent transfers, enter judgment against the transferees for the value of the assets transferred, order that the ZYA, ZHL and Wang post an undertaking in the amount of the value of the transferred assets, attachment, preliminary and permanent injunction against further disposition or transfer of assets, appointment of a receiver, execution on the transferred assets or their proceeds if disposed of;

INHOUSE CO. LAW FIRM

THIRD FOURTH AMENDED COUNTERCLAIMS

8.7.    Consequential and punitive damages;

9.8.    Disgorgement of ZYA, ZHL and Waong's sales and profits;.

10.9.    Compensation for all damages caused by ZYA, ZHL, and Wang's ~~unfair competition and~~ infringement of the '634 Patent to be determined at trial;~~, and but not less than $3,000,000;~~

11.10.    A finding that this case is exceptional and awarding reasonable attorney's fees to Arex pursuant to 35 U.S.C. § 285;

12.11.    A finding that this case is exceptional, thereby trebling the damages and awarding reasonable attorney's fees to Arex pursuant to 3⅟5 U.S.C. §§ 1116 284 and 1117(a)285;

13.12.    Granting Arex pre-and post-judgment interest on its damages, together with all costs and expenses;

14.13.    Finding ZYA, ZHL, and Wang's infringement of the '634 Patent to be willful and increasing damages up to three times the amount found or assessed by the jury;

15.14.    Ordering that ZYA, ZHL, and Wang to deliver to Arex or destroy all infringing products; and

16.15.    Granting Arex such other and further relief as the Court may deem just and proper.

DATED: December 5~~February 23~~, 20254    **INHOUSE CO. LAW FIRM**

By: _____
Alexander Chen, Esq.
~~Katja M. Grosch, Esq.~~

_____Theodore Lee, Esq.,

Attorneys for Defendant and Counterclaimant
Arex Industries, Inc.

Formatted: Font color: Black

~~THIRD~~ FOURTH AMENDED COUNTERCLAIMS

## DEMAND FOR JURY TRIAL

Defendant and Counter claimant thereby demands a trial by jury on all claims.

DATED: December 5February 23, 20254

**INHOUSE CO. LAW FIRM**

By: _____
Alexander Chen, Esq.

Katja M. Grosch, Esq.

Esq.

_____Theodore Lee,

Attorneys for Defendant and Counterclaimant
Arex Industries, Inc.

Formatted: Indent: Left: 0",
First line: 0"

31

THIRD FOURTH AMENDED COUNTERCLAIMS

| Page 3: [1] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 3: [2] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 3: [3] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 3: [4] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [5] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [6] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [7] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [8] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 4: [9] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [10] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [11] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [12] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [13] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [14] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 4: [15] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [16] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [17] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [18] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [19] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [20] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [21] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 4: [22] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [23] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [24] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [25] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [26] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [27] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 4: [28] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [29] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [30] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [31] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [32] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman

| Page 4: [33] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [34] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [35] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [36] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [37] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [38] Formatted | alex chen | 10/31/2025 4:44:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [39] Formatted | alex chen | 10/31/2025 4:53:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman

| Page 4: [40] Formatted | alex chen | 10/31/2025 4:53:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman

| Page 4: [41] Formatted | alex chen | 10/31/2025 4:53:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman

| Page 4: [42] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Font: Not Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [43] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman, Not Bold, Not Italic

| Page 4: [44] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Font: Not Bold, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 4: [45] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman, Not Bold, Not Italic

| Page 4: [46] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman

| Page 4: [47] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Default Paragraph Font, Font: Times New Roman

| Page 4: [48] Formatted | alex chen | 10/31/2025 4:55:00 PM |
|---|---|---|

Font: Not Bold, Not Italic, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 5: [49] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, No underline, Font color: Custom Color(RGB(0,0,10))

| Page 8: [50] Formatted | alex chen | 10/31/2025 5:20:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold

| Page 8: [51] Formatted | alex chen | 10/31/2025 5:20:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold

| Page 8: [52] Formatted | alex chen | 10/31/2025 5:20:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold

| Page 8: [53] Formatted | alex chen | 10/31/2025 5:20:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold

| Page 8: [54] Formatted | alex chen | 10/31/2025 5:20:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold

| Page 8: [55] Formatted | alex chen | 10/31/2025 5:20:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, Not Bold

| Page 8: [56] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [57] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt

| Page 8: [58] Formatted | alex chen | 10/31/2025 10:50:00 AM |

Space Before:  0 pt, After:  0 pt, Line spacing:  Exactly 23 pt

| Page 8: [59] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [60] Formatted | Teddy | 12/5/2025 5:52:00 PM |

Font: Times New Roman, 12 pt

| Page 8: [61] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [62] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt

| Page 8: [63] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [64] Formatted | Teddy | 12/5/2025 5:52:00 PM |

Font: Times New Roman, 12 pt

| Page 8: [65] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [66] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt

| Page 8: [67] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [68] Formatted | Teddy | 12/5/2025 5:52:00 PM |

Font: Times New Roman, 12 pt

| Page 8: [69] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [70] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt

| Page 8: [71] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [72] Formatted | Teddy | 12/5/2025 5:54:00 PM |

Font: Times New Roman, 12 pt

| Page 8: [73] Formatted | Teddy | 12/5/2025 5:54:00 PM |

Font: Times New Roman, 12 pt

| Page 8: [74] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [75] Formatted | alex chen | 10/31/2025 10:52:00 AM |

Font: Times New Roman, 12 pt

| Page 8: [76] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [77] Formatted | Teddy | 12/5/2025 5:54:00 PM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 8: [78] Formatted | Teddy | 12/5/2025 5:54:00 PM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 8: [79] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt, Not Bold

| Page 8: [80] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, 12 pt

| Page 8: [81] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Font color: Auto

| Page 8: [82] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Not Bold, Font color: Auto

| Page 8: [83] Formatted | Teddy | 12/5/2025 5:54:00 PM |
|---|---|---|

Font: Times New Roman, Font color: Auto

| Page 8: [84] Formatted | Teddy | 12/5/2025 5:54:00 PM |
|---|---|---|

Font: Times New Roman, Font color: Auto

| Page 8: [85] Formatted | Teddy | 12/5/2025 5:54:00 PM |
|---|---|---|

Font: Times New Roman, Font color: Auto

| Page 8: [86] Formatted | alex chen | 10/31/2025 10:52:00 AM |
|---|---|---|

Font: Times New Roman, Not Bold, Font color: Auto

| Page 8: [87] Formatted | alex chen | 10/31/2025 5:25:00 PM |
|---|---|---|

Font: 10 pt

| Page 8: [88] Formatted | Teddy | 12/5/2025 6:17:00 PM |
|---|---|---|

Centered,  No bullets or numbering, Tab stops:  0.5", Left

| Page 8: [89] Formatted | alex chen | 10/31/2025 5:33:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, All caps

| Page 8: [90] Formatted | alex chen | 10/31/2025 5:33:00 PM |
|---|---|---|

Font: (Default) Times New Roman, 12 pt, All caps

| Page 8: [91] Formatted | alex chen | 10/31/2025 5:33:00 PM |
|---|---|---|

Font: Times New Roman, 12 pt, Not Bold