Jie Li (SBN 354432)
Glacier Law LLP
251 South Lake Ave Suite 910
Pasadena, California 91101
Telephone: (626) 750-0040
Email: jie.li@glacier.law

Weed, Benjamin (PHV pending)
Glacier Law LLP
5336 Lyman Ave
Downers Grove, IL60515
Email: ben.weed@glacier.law

Dandan Pan (PHV admitted)
Glacier Law LLP
41 Madison Avenue, Ste. 2529
New York, NY 10010
Telephone: (212) 927-5033
Email: dandan.pan@glacier.law

*Attorneys for Plaintiff Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD., a Chinese company,**<br><br>Plaintiff,<br><br>v.<br><br>**AREX INDUSTRIES, INC., a California company,**<br><br>Defendant. | **Case No. 2:22-cv-01692-JWH-PD**<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. DESIGN PATENT NO. D909,634; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Motion Hearing: |

District Judge: Hon. John W. Holcomb
Date: September 24, 2026
Time: 9:00 a.m.
Crtm: 9D (Reagan Bldg)

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 24, 2026, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 9D of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, before the Honorable John W. Holcomb, Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd. ("ZYA") will and hereby does move under Federal Rule of Civil Procedure 56 for summary judgment that the accused VLAND headlight does not infringe U.S. Design Patent No. D909,634 (the "'634 Patent"). ZYA specifically moves for:

**1.** Judgment for ZYA on Count One of the Complaint (Dkt. 1) for declaratory judgment of noninfringement;

**2.** Judgment against Defendant and Counterclaimant Arex Industries, Inc. ("Arex") on Count One (Infringement) of the Fourth Amended Counterclaims (Dkt. 147);

**3.** Judgment against Arex on Count Two (Willful Infringement), which is wholly derivative of Count One.

The Motion is made on the ground that there is no genuine dispute of material fact and ZYA is entitled to judgment as a matter of law. The dispositive evidence is visual and documentary: the five figures of the '634 Patent, the prior art — including prior art Arex has pleaded into this case — and the accused headlight itself.

The Motion is made following the conference of counsel required by L.R. 7-3, which took place on August 6, 2026. Arex opposes the motion.

The Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Joint Statement of Undisputed Facts and Genuine Disputes and the Joint Exhibit lodged pursuant to this Court's Standing Order (Dkt. 163); the Declaration of Jie Li and its exhibits; all matters subject to judicial notice;

the files and records in this action; and such further argument as the Court may permit.

Dated: August 27, 2026

**GLACIER LAW LLP**

By: /s/ Jie Li

Jie Li
*Attorney for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*

# TABLE OF CONTENTS

I. INTRODUCTION ........ 8
II. STATEMENT OF UNCONTROVERTED FACTS ........ 11
A. The ’634 Patent Claims Five Views and Nothing in Broken Lines. ........ 11
B. The Patent Issued Over Formal Objections, Never Over Prior Art, and Only After Two Figures Were Canceled. ........ 11
C. The Prior Art — Including the Prior Art Arex Pleaded Into This Case. ........ 12
D. The Accused Headlight. ........ 13
E. Arex’s Theory, and What Arex Has Given Away. ........ 13
III. LEGAL STANDARD ........ 13
A. Arex Bears the Burden — on Both Counts and on ZYA’s Declaratory Claim. ........ 13
B. The Ordinary Observer Test. ........ 14
IV. THE SCOPE OF THE CLAIMED DESIGN ........ 15
V. ARGUMENT ........ 16
A. Arex’s Own Answers Concede Every Fact This Comparison Requires. ........ 16
B. The Shared Architecture Was in the Prior Art Before Arex Filed. ........ 17
C. The Accused Headlight Omits or Materially Changes Every Feature That Arguably Distinguishes the Claimed Design From the Prior Art. ........ 18
D. Three Horizontal Bars, on Their Own, Are Not a Design Patent. ........ 22
E. Arex’s Brand-Recognition Theory Is Not the Ordinary Observer Test. ........ 23
F. The Comparison Runs Across All Five Claimed Views. ........ 24
G. Arex’s Expert Opinions Cannot Manufacture a Triable Issue, So Their Mere Existence Does Not Warrant Denial of the Motion. ........ 25
H. Willfulness Falls With Infringement. ........ 29
VI. CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022) ....................10, 15, 18, 28

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................13, 17

*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992)........11, 15, 24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................14

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019)....................27

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363 (Fed. Cir. 2023)....................12, 15, 17, 18

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002) 25, 26

*Crocs, Inc. v. ITC*, 598 F.3d 1294 (Fed. Cir. 2010)....................14, 25

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc)........ 9, 14, 15, 20, 23, 24, 25, 26, 28, 29, 30

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) 15, 23

*Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed. Cir. 2004)....................29

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511 (1871) ....................14, 24, 26

*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009).14

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993) .......15, 24

*Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020)...................... 14, 15, 16, 29, 30

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed. Cir. 1988)....................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............14

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014) .......14, 17

*Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981 (Fed. Cir. 2026) .14, 15

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010)....................27

*Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349 (Fed. Cir. 2025).....15, 20, 28

*Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026 (Fed. Cir. 1986)................11, 15, 24

**Statutes**

35 U.S.C. § 102 .......... 11
35 U.S.C. § 173 .......... 29
35 U.S.C. § 271(a) .......... 29

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Arex is not litigating a design patent. It is litigating three horizontal bars it treats as a brand symbol — and a design patent does not protect that.

That is Arex's position, not ZYA's characterization of it. Arex pleads that the '634 Patent has five "main ornamental features." JSF 46. Its experts then walk away from four of them. Timothy Fletcher's report tells the Court that a buyer "would gravitate to the Triple Liner design . . . as the key feature design." JSF 50. Eric Noble tells the Court that the two designs "will be confused . . . due to the triple bar that is so prominent on first read." JSF 67. Kevin Yu calls the bars a "marque design" and the "prominent" focal point, JSF 52, and testifies that "it becomes a symbol of our brand," JSF 64. And Arex's operative pleading states the theory in the words the Federal Circuit retired eighteen years ago: it asks for judgment based on "the similarity between these *points of novelty*." JSF 49.




*Figure 1. The three-way comparison the ordinary observer test requires — the claimed design, the accused headlight, and the closest prior art. Panels taken from the Declaration of Jason C. Hill, omitting the fourth panel (D855,849) shown on the same page of that declaration. [JSF 1, 13, 17–20, 34.]*

There is no point of novelty test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). There is one test, and it asks whether the accused design appropriates the claimed design *as a whole*, judged by an observer who is *conversant with the prior art*. *Id.* at 676, 678. Arex cannot win on one feature, and it has built no case that would enable it to win as to the whole.

Applying the correct test confirms that the motion should be granted. The ’634 Patent issued into a crowded field: *thirteen* vehicle-headlight design patents are cited on the face of Arex’s own patent, and Arex’s own expert reproduces that list. JSF 14–15. The outer envelope, the two stacked projectors, the wrap-around perimeter light, and the inner side lamp are all disclosed in U.S. Design Patent No. D863,627, a reference printed on the face of Arex’s own patent. JSF 13, 17–20. Arex’s own expert concedes that the prior art headlights share these general characteristics. JSF 25. And Arex has pleaded the 2018 Ford F-150 King Ranch headlight into this case as prior art, conceding that the grille-like inner treatment “was already disclosed” there. JSF 21–22. Where a dominant feature of the claimed and accused designs appears in the prior art, that feature “will be no more than a background feature of the design, . . . insufficient by itself to support a finding of substantial similarity,” and the analysis turns to the other features. *ABC Corp. I v. Partnership & Unincorporated Ass’ns Identified on Schedule “A”*, 52 F.4th 934, 941–42 (Fed. Cir. 2022).

Beyond the analysis of the background features, the ’634 Patent actually contributes four things. Three of the four are absent from the accused headlight, and the fourth cannot even be said to be the same in the accused products as in the ’634 Patent:

- The claimed projectors are rounded with truncated edges, set in bezels whose sides display a backward-pointing arrow. The accused projectors are *rectangular*, in bezels with a “Y.” JSF 26–27, 37–38.
- The claimed perimeter light is *interrupted* by an elongated horizontal band. The accused perimeter light is uninterrupted — like the prior art, and unlike the light claimed in the patent. JSF 28–29, 40.
- The claimed design shows seven short vertical elements. The accused headlight has none. JSF 30, 41.

- The claimed bars terminate in three square elements. The accused bars do not. JSF 31, 39.

The accused headlight also carries three prominent features the patent does not claim at all: a dense vertical array of closely spaced bars filling the inner side lamp, a rectangular wedge protruding through the lens, and a downward projection along the bottom edge. JSF 42–45.

Arex's answer is to call three bars its "marque." That is trademark vocabulary, and it is not the law here. "Likelihood of confusion as to source of goods is not [a] necessary or appropriate factor for determining infringement of [a] design patent." *Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029 (Fed. Cir. 1986). "Design patent infringement does not concern itself with the broad issue of consumer behavior in the marketplace." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821–22 (Fed. Cir. 1992). Arex owns a design patent that requires several features. It does not own three horizontal bars, and it may not convert one into the other by calling it a brand.

The Court need not weigh the credibility of any witness to decide this motion. The undisputed record confirms that judgment should be entered for ZYA.

## II. STATEMENT OF UNCONTROVERTED FACTS

### A. The '634 Patent Claims Five Views and Nothing in Broken Lines.

The '634 Patent issued February 2, 2021 from Application No. 29/677,455, filed January 21, 2019, naming Mizeng He as inventor. JSF 1. It has one claim — "The ornamental design for a vehicle headlight, as shown and described" — defined by five figures: a perspective view, a front view, a right side view, an alternative perspective view, and a top view. JSF 2–3. The patent recites that "[t]he broken lines are for environmental purposes only and form no part of the claimed design." JSF 4.

### B. The Patent Issued Over Formal Objections, Never Over Prior Art, and Only After Two Figures Were Canceled.

The application was filed with seven figures. JSF 5. It was never rejected under 35 U.S.C. § 102 or § 103. JSF 6–7. Prosecution proceeded by *Ex parte Quayle*

action, a kind of Patent Office action that issues only when prosecution on the merits is closed and nothing but formalities remain to be addressed. JSF 16. In April 2020 the applicant canceled FIG. 5 and submitted replacement drawings converting portions of FIG. 2 from solid lines to broken lines. JSF 8. Primary Examiner Angela J. Lee of Art Unit 2911, JSF 12, refused to enter them, finding "objectionable new matter": "FIG. 2 shows a portion in broken lines that was previously shown in solid lines," "some broken lines in the replacement drawings have been removed," and "there are additional broken lines that have no antecedent basis." JSF 9. The applicant then canceled FIG. 2 as well. JSF 10. The patent issued with five figures. JSF 11. The line between what Arex claims and what it does not was fixed by the Examiner, over the applicant's attempt to move it.

**C. The Prior Art — Including the Prior Art Arex Pleaded Into This Case.**

D863,627 is cited on the face of the '634 Patent. JSF 13. It discloses a vehicle headlight with substantially the same peripheral shape, two vertically aligned projector lights with surrounding bezels, a continuous LED bar wrapping the outer perimeter, and an inner side lamp. JSF 17–20. It is one of thirteen vehicle-headlight design patents cited on the face of the '634 Patent — a list Arex's own expert reproduces in full. JSF 14–15.

Arex has pleaded the rest. Its operative counterclaim alleges that the 2018 Ford F-150 King Ranch Edition headlight is prior art, and that the grille-like inner treatment "was already disclosed in prior art, specifically, the 2018 Ford F-150 King Ranch Edition exterior halogen headlight." JSF 21–22. D863,627, D855,849, D863,628, and the 2018 Ford F-150 headlight are each a design applied to a vehicle headlight — the article of manufacture identified in the '634 claim. JSF 23; *see Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1377–79 (Fed. Cir. 2023) (*Columbia Sportswear II*).

Arex's own expert concedes the baseline: the prior art headlights have "general similarities as headlights, such as two light bulbs (aka projector lights)," peripheries that are "rectangular, C-shaped or reverse C-shaped," bulbs that are "square, rectangular or round," and "a continuous light bar wrapping around the outer perimeter." JSF 25.

### D. The Accused Headlight.

Arex accuses ZYA's VLAND LED headlight for the 2018–2020 Ford F-150, SKU G167-YAA-F150-2042A-01010062. JSF 34. Fletcher states that "there is only one accused product." JSF 35. In discovery, Arex objected — seven separate times — that the accused headlight "involved at least two different product numbers." JSF 36. Arex has never reconciled the two positions.

### E. Arex's Theory, and What Arex Has Given Away.

Arex pleads five "main ornamental features," JSF 46, then concedes that the inner side lamp differs, JSF 48. It pleads that the "Triple LED Bars are the prominent design element," JSF 47, and seeks judgment on "the similarity between these points of novelty," JSF 49. Fletcher opines that the buyer "would gravitate to the Triple Liner design," JSF 50, and that the feature "departs conspicuously from the prior art," JSF 51. Yu describes the bars as Arex's brand symbol. JSF 52. Slifer and Yu both recite the rule that defeats them: when a claimed design is close to the prior art, small differences between the claimed and accused designs become important to the ordinary observer. JSF 53.

## III. LEGAL STANDARD

### A. Arex Bears the Burden — on Both Counts and on ZYA's Declaratory Claim.

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the

nonmovant carries the trial burden, the movant may prevail by identifying the absence of evidence to sustain it. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). "Metaphysical doubt" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden of proving infringement is Arex's and stays there. "[T]he patentee bears the burden of persuasion on the issue of infringement," and the Declaratory Judgment Act, being "procedural" only, does not shift it. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 196, 199 (2014).

**B. The Ordinary Observer Test.**

The sole test for design patent infringement asks whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same," such that the observer is "induc[ed] . . . to purchase one supposing it to be the other." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 527–28 (1871), *quoted in Egyptian Goddess*, 543 F.3d at 668. The point of novelty test, which appears to be the test Arex relies on, is gone. *Egyptian Goddess*, 543 F.3d at 678; *accord Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).

Where the designs are not plainly dissimilar, the fact finder compares the claimed design, the accused design, and the prior art. *Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981, 988 (Fed. Cir. 2026); *Egyptian Goddess*, 543 F.3d at 678. Five rules govern that comparison:

***First***, "when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676; *accord Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344 (Fed. Cir. 2020); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303–04 (Fed. Cir. 2010).

***Second***, a dominant feature that appears in the prior art "will be no more than a background feature of the design, necessary for a finding of substantial similarity

but insufficient by itself to support a finding of substantial similarity," and "the focus . . . will be on other features of the design." *ABC Corp. I*, 52 F.4th at 941–42.

***Third***, the comparison is of overall designs, "not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015).

***Fourth***, the accused product is compared to the claimed *drawings* — not to Arex's own commercial embodiment and not to Arex's brand. *Lanard Toys*, 958 F.3d at 1344; *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988).

***Fifth***, source confusion is irrelevant. *Unette*, 785 F.2d at 1029; *Braun*, 975 F.2d at 821–22; *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993) ("Design patent infringement relates solely to the patented design, and does not require proof of unfair competition in the marketplace.").

Comparison prior art must be applied to the same article of manufacture, *Columbia Sportswear*, 80 F.4th at 1377–79, and its production is ZYA's burden, *Egyptian Goddess*, 543 F.3d at 679 — a burden ZYA satisfies by relying on the prior art references printed on the face of Arex's patent and with prior art Arex itself relied on in the pleadings in this case.

Whether an ordinary observer would be deceived is a question of fact, but it is a question that must be resolved as a matter of law where the record permits only one answer. The mere existence of an opposing expert declaration does not change that. The Federal Circuit affirmed summary judgment of noninfringement this year in *Range of Motion*, 166 F.4th at 988–91; in *Lanard Toys*, 958 F.3d at 1344–45; and in *Egyptian Goddess* itself, 543 F.3d at 681–83, over a declaration opining that an ordinary observer would be deceived. And in *Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349, 1358–59 (Fed. Cir. 2025), the court reversed the denial of judgment as a matter of law after a jury verdict, holding expert testimony that was "wholly conclusory" was legally insufficient to support an infringement finding.

## IV. THE SCOPE OF THE CLAIMED DESIGN

1. **The broken lines are unclaimed.** The patent says so on its face. JSF 4. And the boundary is the one the issued drawings show: when the applicant submitted replacement drawings converting solid lines to broken lines in FIG. 2, the Examiner declined to enter them as new matter, and the applicant canceled the figure rather than pursue the change. JSF 8–10.
2. **The claim scope is defined all five figures.** JSF 3. A patentee that claims five views may not enforce one and discard four.
3. **The accused product is compared to the drawings.** It is not compared to Arex's own commercial embodiment, nor is it compared to Arex's "brand." *Lanard Toys*, 958 F.3d at 1344.

## V. ARGUMENT

### A. Arex's Own Answers Concede Every Fact This Comparison Requires.

Arex's answer to ZYA's statement of undisputed facts decides this motion. Arex admits that the closest prior art and the claimed design share the same peripheral shape. JSF 17. It admits that fitment to the Ford F-150 constrains that shape. JSF 24. And it admits that the three horizontal bars are the only feature common to the claimed design and the accused headlight that this record identifies as absent from the prior art. JSF 33.

Arex then admits every difference. The accused projector lights are rectangular, not rounded. JSF 37. The side of the accused bezel is a "Y," not a backward-pointing arrow. JSF 38. The accused headlight does not carry the three square terminals at the outer ends of the bars. JSF 39. It does not carry the elongated horizontal band that interrupts the perimeter light. JSF 40. It does not carry the seven short vertical elements. JSF 41. Its inner side lamp is a vertical array of closely spaced horizontal bars. JSF 42. Its lens carries an outward wedge, and its bottom edge a downward projection. JSF 44–45.

To each of those admissions Arex appends one sentence: that the admitted feature is an isolated detail that does not determine the overall ornamental impression. That is argument about the legal weight of an admitted fact, and it is all Arex has. Arex identified no counter-evidence of its own. A patentee that concedes each difference and contests only its significance has not identified a genuine dispute of material fact; it has posed a question of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Arex bears the burden of proving infringement, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 196, 199 (2014), and it cannot carry that burden by disputing the consequence of facts it has admitted.

What follows therefore proceeds on an admitted record. The question is not what the accused headlight looks like — on that the parties now agree — but whether a design that keeps only what the prior art already disclosed, and takes none of what the patent added except a variant of one feature, appropriates the claimed design as a whole in the eye of an observer familiar with that art. It does not.

**B. The Shared Architecture Was in the Prior Art Before Arex Filed.**

Everything that makes the ’634 Patent design fit as a Ford F-150 headlight was in the art before Arex filed. The peripheral shape, the two stacked projectors, the wrap-around perimeter light, and the inner side lamp are all in D863,627 — a reference on the face of Arex’s own patent. JSF 13, 17–20. The peripheral shape in particular is shared for a reason that has nothing to do with Arex’s design: the claimed design, the closest prior art, and the accused headlight must each conform to the same F-150 headlight opening size, shape, and dimensions, or it will not fit or function. JSF 24. A similarity every headlight built for this truck necessarily shares cannot be the basis for finding patent infringement here. D863,627 is a design applied to a vehicle headlight — the article of manufacture the ’634 claim identifies — and so it qualifies as comparison prior art. JSF 23; *Columbia Sportswear II*, 80 F.4th at 1377–79.

Arex put the rest of the pertinent background prior art into the record itself. Its operative counterclaim pleads that the 2018 Ford F-150 King Ranch headlight is prior art, and that the grille-like inner treatment "was already disclosed" there. JSF 21–22. Its own expert concedes that the prior art headlights share the two projector lights and rectangular, C-shaped, or reverse-C-shaped peripheries, and that some of them include a continuous perimeter light bar. JSF 25. He goes further, and the concession is dispositive of this section: Russell Slifer identifies D863,627 as "*the closest prior art*" and states that it "*has many of the same features as the '634 Patent and the Accused Product*" — everything, on his account, but the three bars. JSF 68. That is Arex's own witness placing the entire shared architecture in the prior art. Arex cannot plead a reference into the prior art while attacking ZYA's patent and then treat the same reference as absent when it narrows Arex's own.

The legal consequence of these admissions is black-letter design patent law. A dominant feature present in the prior art is "no more than a background feature," and "the focus of the infringement substantial similarity analysis . . . will be on other features of the design." *ABC Corp. I*, 52 F.4th at 941–42. Comparison prior art "serves as background when comparing a claimed and accused design." *Columbia Sportswear*, 80 F.4th at 1377.

### C. The Accused Headlight Omits or Materially Changes Every Feature That Arguably Distinguishes the Claimed Design From the Prior Art.

The following feature-by-feature comparison of what the '634 Patent claims against what the accused headlight actually is, with the prior art held in view throughout, confirms why summary judgment of non-infringement is warranted.

***Projectors and bezels.*** The claimed projectors are rounded with truncated upper and lower edges, held in bezels whose sides form a backward-pointing arrow. JSF 26–27. The accused projectors, on the other hand, are rectangular, in bezels whose sides form a "Y" shape and not a backward-pointing arrow. JSF 37–38. These are the two largest illuminated elements on the face of the lamp. Swapping a pair of

rounded, arrow-flanked lenses for a pair of rectangles in Y-shaped bezels is not a detail; it is the difference between one face and another to an ordinary observer. Notably, with regard to the most prominent element of the claimed design, the accused headlight looks like the *prior art*, not the patent: the prior art '627 projectors are "square" and "rectangular with rounded corners." JSF 26–27.

***The interrupted perimeter light.*** The claimed perimeter bar is broken by an elongated horizontal band on the inner peripheral side — a departure from the prior art, whose perimeter bar runs unbroken. JSF 28–29. The accused headlight's perimeter treatment, like the prior art, is unbroken. JSF 40. Again: where the accused product departs from the patented design, it tracks the prior art.

***The seven short vertical elements.*** The claimed design places seven short vertical elements along the inner boundary of the lamp. JSF 30. The accused headlight has none of them. JSF 41. Arex's experts do not contend otherwise.

***The three square terminals.*** The claimed bars end in three substantially square elements. JSF 31. The accused bars end in nothing. JSF 39. These square terminals are the finish of the one feature Arex calls its "marque," but these features are lacking in the accused products.

***What the accused headlight adds.*** A dense vertical array of closely spaced bars occupying the inner side lamp — a treatment "significantly different in shape and appearance" from the inner side lamp the '634 Patent shows. JSF 42–43. A rectangular wedge protruding outward through the lens field — a feature the '634 Patent does not show. JSF 44. A downward projection altering the bottom silhouette. JSF 45.

The following images, reproduced from ZYA's expert's report on non-infringement, show in graphical form the four differences outlined above:




*Figure 2. The four features that distinguish the claimed design from the prior art, compared feature by feature. Annotated drawings reproduced from images in the Declaration of Jason C. Hill. [JSF 26–33, 37–43.]*

Notably, every one of these differences is visible on at least one of the surfaces the five figures in the ’634 Patent depict — the face, the lens, the side, the outline. Together they produce a headlight that reads as rectilinear, grille-dominant, and sculpted, against a claimed design that reads as rounded, open, and planar. That is precisely the analysis the Federal Circuit requires: the inquiry “necessarily focuses on the similarities or differences of individual features . . . as well as the existence of other non-common features and the arrangement of the features in the overall design.” *Top Brand*, 143 F.4th at 1358.

To the extent Arex argues that the ’634 Patent is “a combination of old features that creates an appearance deceptively similar to the accused design,” *Egyptian Goddess*, 543 F.3d at 677–78, that argument cannot carry the day. The combination the ’634 Patent claims is rounded projectors *plus* arrow bezels *plus* an

interrupted perimeter *plus* seven verticals *plus* terminated bars. The accused headlight has none of the first four and an unterminated, different version of the fifth. Different elements in a different arrangement do not make a deceptively similar combination.










The five elements of the claimed design identified by ZYA's expert, and where each is found, is summarized in the following table:

| | **Element of the '634 design (Hill ¶ 36)** | **In prior art '627?** | **In the accused headlight?** |
|---|---|---|---|
| **1** | Seven small vertical bars between the upper and lower continuous LED portions | No | No — absent entirely |
| **2** | Trapezoidal reflex area, vertically oriented | Placement common in the prior art | Present, differently designed |
| **3** | Three amber signal lamps held by a square outer shape that interrupts the white LED outlining strip | No | Bars present, but no square terminal end; the outlining strip is not interrupted |

| | **Element of the ’634 design (Hill ¶ 36)** | **In prior art ’627?** | **In the accused headlight?** |
|---|---|---|---|
| **4** | Truncated-circular projector in a bezel with inset upper and lower geometric shapes | No | No — rectangular projector, different bezel |
| **5** | Outer lens surface free of sculptured elements | — | **No — a prominent sculptural feature protrudes through the lens** |

*Figure 3. Strip away what D863,627 already disclosed and this is what is left of the claimed design. The five numbered elements are ZYA’s expert’s identification of the features that make up the ’634 design; the table records, for each, whether it appears in the closest prior art and whether it appears in the accused headlight. Annotated drawings reproduced from the Declaration of Jason C. Hill. [JSF 26–33, 37–43.]*

ZYA does not have to persuade the Court that these differences matter, because Arex’s own expert has already said so. Russell Slifer — Arex’s designated expert, a former Deputy Director of the United States Patent and Trademark Office — wrote in his opening report that there are “small differences between the Accused Product and the ’634 Patent that weigh in favor of the[] determination that the Accused Product is ***not*** *substantially the same as the ’634 Patent*.” He singled out the inner side lamp and the outer peripheral light, and concluded that those differences “*could be important to the eye of the hypothetical ordinary observer*.” JSF 69. Arex is bound by that. Its own Rule 702 witness has conceded both halves of what ZYA must show: that the differences exist, and that they weigh against substantial sameness in the eye of the very observer the test posits.

**D. Three Horizontal Bars, on Their Own, Are Not a Design Patent.**

One feature is shared between the ’634 Patent and the accused products— three marginally spaced horizontal bars between the projectors (albeit with different shapes at their termination) — and it is the only common feature not already in the prior art of record. JSF 32–33. Arex has staked the entire case on it. JSF 47, 50–52.

*Egyptian Goddess* permits a factfinder to weigh a feature that departs from the prior art — but only *within* the overall comparison, never as a standalone requirement and never as a substitute for the overall comparison. 543 F.3d at 678. The question is not whether the accused design took *a* feature; it is whether it appropriated the claimed design *as a whole*. *Id.* at 677–78; *Ethicon*, 796 F.3d at 1335 (the factfinder must compare "similarities in overall designs, not similarities of ornamental features in isolation"). Arex treats the three bars as dispositive and never asks what they look like, where they sit, or what surrounds them.

Arex fails even on its theory that the shared three-bar design results in infringement. The claimed bars terminate in three square elements; the accused bars do not. JSF 31, 39. And the bars do not float in space. They sit inside a structure that differs in every particular — different projectors, different bezels, a different inner side lamp, a sculpted lens, a different silhouette. Visual impression is contextual. Arex may not crop away the design and call what is left the '634 Patent's claimed scope.

**E. Arex's Brand-Recognition Theory Is Not the Ordinary Observer Test.**

Arex's chief executive explained Arex's theory of infringement, but did not articulate a legally cognizable design patent infringement. Asked what the "focal point" is for, Kevin Yu — Arex's "CEO in U.S.," JSF 52 — testified that the triple-light bar lets Arex "differentiate our products to other — compared to other brands or OEMs, with that iconic symbol," that it lets Arex "build, like, a brand recognition," that "where we put the triple-light bars . . . we identified them as AlphaRex items," that "it becomes a symbol of *our brand*" and that "it is very important for us to apply this focal point to our products *to establish our brand*." JSF 64.

That is a brand-recognition theory, and it is not an accepted test for design patent infringement. A design patent protects an ornamental design; it does not protect a source identifier. "Likelihood of confusion as to source of goods is not [a]

necessary or appropriate factor for determining infringement of [a] design patent." *Unette*, 785 F.2d at 1029. "Design patent infringement does not concern itself with the broad issue of consumer behavior in the marketplace." *Braun*, 975 F.2d at 821–22. And it "relates solely to the patented design, and does not require proof of unfair competition in the marketplace." *L.A. Gear*, 988 F.2d at 1126. Fletcher's "Triple Liner design," Yu's "marque," and Noble's "first read" are all the same argument, and it is an argument for a case Arex did not bring.

Yu's testimony fails on Arex's own terms as well. *Gorham* asks whether the observer is "induced . . . to purchase one supposing it to be *the other*." 81 U.S. at 528. Yu described something else entirely: a shopper who sees "two items that look very similar," finds "one put a different price for what was cheaper," and buys the cheaper one — a shopper who, in Yu's words, "*might not know the difference, but, you know, because of the price*, so they will choose to purchase." JSF 65. Price competition is not the *Gorham* inquiry. A purchaser who buys the cheaper of two products *because it is cheaper* has not been induced to buy one supposing it to be the other. Yu's testimony describes the former, and does not support a *Gorham* finding in Arex's favor.

Nor is the ordinary observer the least attentive shopper Arex can imagine. Instead, an "ordinary observer" is a hypothetical person who is *familiar with the prior art* and gives "such attention as a purchaser usually gives." *Gorham*, 81 U.S. at 528; *Egyptian Goddess*, 543 F.3d at 676. An observer familiar with the relevant headlight prior art — in particular D863,627, cited on the face of Arex's own patent — does not mistake rectangles for circles, or miss a wedge protruding from a lens.

**F. The Comparison Runs Across All Five Claimed Views.**

Arex's theory of infringement necessarily requires the Court to ignore five different patent figures, and instead compress them into a single feature. But the claim is defined by five figures — perspective, front, right side, alternative perspective, and top. JSF 3. Two of the accused headlight's added features are three-

dimensional: a rectangular wedge that *protrudes outward through the lens* and a projection along the *bottom edge*. JSF 44–45. Those are not visible in a front elevation at all; they appear only in the perspective and side views the claim also covers. The Federal Circuit has already decided the impermissibility of this approach: "[T]he 'ordinary observer' analysis is *not* limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of *all figures* of a design patent," because "[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design." *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665. *Egyptian Goddess* displaced only *Contessa*'s point-of-novelty analysis; the all-figures rule survived and has been applied since. *See, e.g., Crocs*, 598 F.3d at 1302–03 (the factfinder "needed to apply the ordinary observer test to 'the design shown in Figures 1–7'").

### G. Arex's Expert Opinions Cannot Manufacture a Triable Issue, So Their Mere Existence Does Not Warrant Denial of the Motion.

The opinions of Arex's experts Yu, Fletcher, and Slifer fail on their own terms, and Arex's own witnesses explain why. Fletcher, Arex's infringement expert, issued a report stating that he examined a physical sample of the accused headlight. JSF 58. What it never does is explain how that examination bears on the differences. The report identifies **no** feature-level comparison of the rounded versus rectangular projectors, the arrow bezel, the interrupted perimeter band, the seven vertical elements, or the three square terminals. It never uses the words "bezel," "arrow," "square," or "vertical element." JSF 59, 74. It addresses the differences only collectively, as "small differences in secondary design elements" that "would not hinder the ordinary observer." JSF 59–60.

His method also ignores (or at least misses) the very comparison the law requires. Fletcher's opinion rests on the premise that the ordinary observer, seeing the headlight only in "very limited views at point of sale, almost all of which are in

a perspective view," cannot "scrutinize the design from all angles and in as much detail" as someone holding it. JSF 61. That premise is not merely unhelpful; it is contrary to law. The Federal Circuit has squarely held that "the 'ordinary observer' analysis is *not* limited to those features visible at the point of sale, but instead must encompass all ornamental features visible *at any time during normal use* of the product," and that confining "the infringement inquiry to the time of sale, rather than to the time of normal and intended use," is "**clear error**." *Contessa*, 282 F.3d at 1378–79. Fletcher built his opinion on the premise *Contessa* forbids. An opinion that rests on a legally erroneous framework does not become a triable issue of fact because an expert signed it. The ordinary observer of *Gorham* gives "such attention as a purchaser usually gives" and is charged with familiarity with the prior art. He is not defined down to whatever the least informative product listing happens to show.

And the images he compared were altered before he compared them. Fletcher used "software tools" to strip what he calls "visual noise" — which, on his own definition, includes in a photograph "the background" and "information that's not relevant." JSF 62. Asked whether removing "visual noise" is a common method or common practice in design patent analysis, he could not say that it is: "I haven't seen every expert's report in every design patent case," and "I don't know." JSF 63. Neither the report nor the testimony identifies what was removed from any particular image, or why its removal left the overall visual impression unchanged.

Slifer does not fill that gap. His infringement opinion rests on a single feature — the three bars — and he reaches it only after conceding that the differences ZYA identifies "could be important to the eye of the hypothetical ordinary observer." JSF 69. His two premises then cancel: he quotes *Egyptian Goddess* for the rule that small differences matter when the claimed design is close to the prior art, then adopts Fletcher's observer who spends "less than a minute" with "little to no scrutiny." JSF 71–72. And the agency experience prefacing every one of his opinions, JSF 70, is experience his own report calls no training at all: the USPTO "does not provide

examiners with any training regarding analyzing issues of infringement." JSF 73. Reducing the ordinary observer to one feature is the dissection Slifer accuses Gandy of committing.

The remaining opinions add nothing. They do not dispute what the record shows. Arex's witnesses do not deny that the accused projectors are rectangular in the accused product, that the square terminals are absent in the accused product, that the perimeter band is absent in the accused product, or that the seven vertical elements are absent in the accused product. They dispute only how much weight those differences should carry. That is not enough. Infringement is Arex's burden to prove by a preponderance. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). And the observer who must be persuaded is one "considered to be familiar with prior art designs." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1130 (Fed. Cir. 2019) (*Columbia Sportswear I*). Testimony that assigns weight to differences without ever confronting them does not carry that burden.

Arex has offered no evidence — no survey, no test, no reasoned analysis — that an observer familiar with this prior art would overlook these differences. Nor has Arex ever put its own position on the differences into the record: asked in three requests for admission to address, in terms, whether the accused headlight has a "different shape enclosing its light bulb compared with Patent-in-Suit design," an "orange stripes column while Patent-in-Suit has no such design," and "more curves and edges design while Patent-in-Suit has no such design," it responded with objections alone. JSF 54. ZYA does not ask the Court to deem those requests admitted. It merely asks the Court to note that after full discovery Arex has produced no evidence disputing the differences at all. And Yu, the witness Arex designated to opine on infringement, testified that he has no "professional answer" on design patent law and does not consider himself an expert in it: "I would say no, because I . . . didn't go to class for this. I did not have any education on this." JSF 66.

Both of Arex's experts applied a test the Federal Circuit abolished. Slifer rests on the one feature the prior art lacks: "[n]one of the prior art references include the triple horizontal led bars," and the closest prior art "has many of the same features as the '634 Patent and the Accused Product but fails to include the prominent triple horizontal led bars." JSF 68. Fletcher states it the same way: because "none of the prior art bears the same Triple Liner design," that feature must be given "due weight." JSF 51. That is the point of novelty test, and *Egyptian Goddess* held en banc that it "should no longer be used." 543 F.3d at 677–78. The ordinary observer test asks whether the accused design appropriates the claimed design as a whole, judged by an observer familiar with the prior art — not whether the accused product took the one feature the prior art lacked. Arex's experts compound the error by describing that feature as one the accused product "copied," JSF 50; copying is not an element of design patent infringement, and its presence or absence does not move the ordinary observer inquiry.

Nor does the analysis improve when it is read. Fletcher's report announces a "Three-Way test" applied to thirteen criteria and then resolves each of them with the same paragraph — including, verbatim, the sentence that "only an approximate match would be expected." JSF 76. A method whose output does not vary with its input has not been applied. Slifer's three-way comparison is one sentence, JSF 78, and each of his ultimate opinions is prefaced "In my opinion based on my experience." JSF 70.

That is the testimony over which the Federal Circuit reversed the denial of judgment as a matter of law in *Top Brand*: expert testimony that is "wholly conclusory, simply stating that the accused products were 'substantially similar'" to the patented design is legally insufficient to support a finding of infringement. 143 F.4th at 1358–59. It is also the defect for which the Federal Circuit reversed a preliminary injunction in *ABC Corp. I v. Partnership & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941–42 (Fed. Cir. 2022), where the

patentee leaned on a dominant shape the prior art already disclosed. If such testimony cannot sustain a verdict after trial, it cannot create a triable issue before one. *Accord Lanard Toys*, 958 F.3d at 1344–45; *Egyptian Goddess*, 543 F.3d at 681–83.

### H. Willfulness Falls With Infringement.

Count Two alleges willful infringement. JSF 56. "Willful infringement requires that the defendant infringe a valid patent . . . ." *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 n.2 (Fed. Cir. 2004). Judgment in ZYA's favor as to Count One disposes of Count Two, and the Court need not reach Arex's allegations concerning notice, knowledge, or ZYA's conduct.

Arex's own verified discovery response supplies an independent reason. Arex answered, under oath, that "[b]ased on information and documents received in discovery from ZYA, the infringement began in January 2021." JSF 55. The '634 Patent did not issue until February 2, 2021. JSF 1. Infringement reaches only acts committed "during the term of the patent," 35 U.S.C. § 271(a), and a design patent's term runs from grant, *id.* § 173.[1] Arex's verified answer thus dates the conduct it complains of to a period in which there was no patent to infringe — much less to infringe willfully.

## VI. CONCLUSION

The '634 Patent claims one thing: the ornamental design shown in five drawings. Strip away the architecture that D863,627 and the F-150 headlight already disclosed, and what distinguishes that claimed design from the art is a specific set of features — rounded projectors in arrow bezels, an interrupted perimeter band, seven short verticals, and bars that terminate in three square elements. The accused headlight has none of the first three, and its bars terminate in nothing. What it does have, the patent does not claim: a dense vertical array filling the inner lamp, a wedge

[1] Notably, unlike most utility patents, design patent applications do not publish until they issue.

protruding through the lens, and a downward projection along the bottom edge. On this record no reasonable factfinder applying the ordinary observer test, with the prior art in view, could find the two designs substantially the same. That is the finding on which the Federal Circuit affirmed summary judgment in *Egyptian Goddess* itself reached *after* the three-way comparison. 543 F.3d at 682; *accord Lanard Toys*, 958 F.3d at 1343, 1345 (affirming summary judgment of noninfringement on the same reasoning).

ZYA respectfully requests that the Court grant summary judgment of noninfringement of U.S. Design Patent No. D909,634; enter judgment for ZYA on Count One of the Complaint; enter judgment against Arex on Counts One and Two of the Fourth Amended Counterclaims; and grant such further relief as is just.

Dated: August 27, 2026

**GLACIER LAW LLP**

By: /s/ Jie Li

Jie Li

*Attorney for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd., certifies that the memorandum of points and authorities is 23 substantive pages, which complies with the 25-substantive-page limit set by Paragraph 12(b) of the Court's Standing Order (Dkt. 163), which applies notwithstanding L.R. 11-6.1 and 11-6.2.

Dated: August 27, 2026

/s/ Jie Li

Jie Li

**CERTIFICATE OF SERVICE**

I hereby certify that on this August 27, 2026, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

Date: August 27, 2026

/s/ Jie Li

Jie Li, Esq.
jie.li@glacier.law
Glacier Law LLP
*Attorney for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*