Jie Li (SBN 354432)
Glacier Law LLP
251 South Lake Ave Suite 910
Pasadena, California 91101
Telephone: (626) 750-0040
Email: jie.li@glacier.law

Weed, Benjamin (PHV pending)
Glacier Law LLP
5336 Lyman Ave
Downers Grove, IL 60515
Email: ben.weed@glacier.law

Dandan Pan (PHV admitted)
Glacier Law LLP
41 Madison Avenue, Ste. 2529
New York, NY 10010
Telephone: (212) 927-5033
Email: dandan.pan@glacier.law

*Attorneys for Plaintiff Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**ZHEJIANG YUANZHENG AUTO & MOTORCYCLE ACCESSORIES CO., LTD., a Chinese company,**

Plaintiff,

v.

**AREX INDUSTRIES, INC., a California company,**

Defendant.

**Case No. 2:22-cv-01692-JWH-PD**

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Motion Hearing:
District Judge: Hon. John W. Holcomb
Date: September 24, 2026
Time: 9:00 a.m.
Crtm: 9D (Reagan Bldg)

# TABLE OF CONTENTS


I. INTRODUCTION .......... 4

II. ARGUMENT .......... 5

A. Arex's Own Replies Confine Facts 76 Through 80 to Report Content .......... 5

B. The "Shared Arrangement" Is the Prior-Art Architecture Plus the Three Bars .......... 6

C. Arex's Experts Supplied the Point-of-Novelty Framework .......... 7

D. The Three-Way Comparison Resolves This Motion .......... 8

E. Arex's Authorities Do Not Reach This Record .......... 11

F. Willfulness Falls With Infringement .......... 13

III. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022) ....................4, 6, 7, 10

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365 (Fed. Cir. 2006) ....................12

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010) ....................12

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc) ....................4, 8, 9, 11, 12

*Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020) ....................13

*Minkin v. Gibbons, P.C.*, 680 F.3d 1341 (Fed. Cir. 2012) ....................13

*Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043 (Fed. Cir. 2001) ....................13

*Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981 (Fed. Cir. 2026) ....................10, 13

*Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, 827 F. Supp. 2d 1150 (S.D. Cal. 2011) ....................7

*Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349 (Fed. Cir. 2025) ....................12, 13

*Wallace v. Ideavillage Prods. Corp.*, 640 F. App'x 970 (Fed. Cir. 2016) ....................10

**Rules and Orders**

Standing Order (Dkt. 163) ¶ 15(b) ....................5, 11

## I. INTRODUCTION

Arex's Opposition defends a theory its experts did not offer. It now disclaims any contention "that three bars are a freestanding patent; that copying, price, or brand recognition is an element; that the other features are invisible; or that expert disagreement automatically defeats summary judgment." Dkt. 165 at p. 6. What is left is one proposition: that a jury could find the designs substantially the same because they share what Arex calls the "shared central triple-bar arrangement" — a composition the prior art does not show. Dkt. 165 at p. 13.

The Joint Statement forecloses it three times over.

First, the facts Arex builds that proposition on establish only what its experts wrote, not what the designs look like. Arex said so itself, in reply, as to each of them — including the two facts on which its three-way comparison depends. JSF 76, 77, 79, 80.

Second, the "shared arrangement" is the prior-art architecture plus the three bars, and Arex admits every component of it. JSF 17-20, 24-25. Arex also admits that those bars are the only feature the two designs share that the prior art does not already show. JSF 33. A feature the prior art already supplies is "no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity." *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022).

Third, Arex concedes that on several features the accused headlight resembles the closest prior art more than it resembles the claimed design. Dkt. 165 at p. 15. That is the finding the three-way comparison exists to produce, and it is the finding on which *Egyptian Goddess* itself affirmed summary judgment of noninfringement. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678, 682-83 (Fed. Cir. 2008) (en banc).

Arex's experts did not repair that gap; they created it. Each tied the infringement conclusion to the single feature absent from the art, JSF 50-51, 67-68, and Slifer's report states that the accused product's differences "weigh in favor of" the determination this Motion asks the Court to draw, JSF 69 (undisputed).

The Court should grant the Motion.

## II. ARGUMENT

### A. Arex's Own Replies Confine Facts 76 Through 80 to Report Content

Arex cannot use Facts 76 through 80 to prove what the designs look like, because Arex told the Court they do not.

Under the Standing Order, the parties "must cite to the factual statement set forth in the Joint Statement in their respective briefs for any fact that they wish to identify as a material fact under Rule 56(a)," and "[c]itations found in the briefs to any individual exhibits or the Joint Exhibit will be disregarded." Dkt. 163 ¶ 15(b). The Joint Statement is therefore the universe of material fact on this Motion.

ZYA disputed Facts 76 through 80 on the ground that they were undisputed only as statements of what Arex's experts' reports contain. JSF 76-80. Arex's replies accepted that limit. Fact 76 "states two conclusions Fletcher reached," and "ZYA admits that the Report states those conclusions." JSF 76. Fact 77 "states what Slifer compared and reported; ZYA admits that limited proposition." JSF 77. Fact 79 "states what Slifer characterized and opined; it does not ask ZYA to accept those opinions as true." JSF 79. Fact 80 "states only the conclusions expressed in Slifer's Report, which ZYA admits the Report contains." JSF 80.

The Opposition then uses those same facts to prove the visual propositions themselves. It cites Fact 77 to establish that "the claimed and accused designs share an overall arrangement that D863,627 lacks," Dkt. 165 at p. 5, and that the designs "are not plainly dissimilar," Dkt. 165 at p. 11. It cites Facts 76 and 80 to establish that "both of Arex's experts found the accused headlight closer to the claimed design

than to that art." Dkt. 165 at p. 14. And it relies on Facts 77 through 80 as the record basis for its theory throughout. See Dkt. 165 at pp. 8, 13-16, 19-22, 24.

That is the gap, and it is a narrow one. Arex may rely on its experts' opinions as opinion evidence; whether those opinions carry its burden under Rule 56 is a separate question, addressed in Part II.E. What Arex may not do is treat a fact whose admitted scope is that the report says something as though the Joint Statement had admitted that what the report says is so. Because Arex itself drew that line, the Joint Statement contains no admitted fact that these designs share an overall arrangement absent from the prior art, and none that the accused headlight is visually closer to the claimed design than to D863,627.

What the Joint Statement does contain on that subject is Fact 33: the triple bars are "the only feature common to the '634 Patent design and the accused headlight that is not shown in the prior art of record." JSF 33 (undisputed). The Court should read Facts 76 through 80 as establishing only the contents of Arex's experts' reports, which is all Arex says they establish.

**B. The "Shared Arrangement" Is the Prior-Art Architecture Plus the Three Bars**

Arex's overall-impression theory reduces to the one feature it says it does not rely on.

Where a dominant feature already appears in the prior art, the substantial-similarity analysis "will be on other features of the design," because that feature is "no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity." *ABC Corp. I*, 52 F.4th at 942.

Arex describes its shared composition as "two vertically arranged projectors connected visually by a conspicuous central triple-bar treatment within a related headlight envelope." Dkt. 165 at p. 16. Every element of that description except the bars is admitted prior art. D863,627 discloses substantially the same peripheral shape,

the vertically aligned projector lights, the continuous perimeter light band, and the inner side lamp. JSF 17-20. Fitment to the Ford F-150 constrains the general outer perimeter. JSF 24. Slifer's own report says the same of the prior art generally. JSF 25.

Arex answers that it "does not contend that any shared background component is protectable by itself," but that "the arrangement and visual relationship of the components influence the overall impression." Dkt. 165 at p. 13. The difficulty is arithmetic. Once the perimeter, the stacked projectors, the perimeter band, and the inner lamp are treated as background features, the "arrangement" that remains is the three bars and their placement — as Arex confirms when it locates the composition's distinctiveness in the bars' "number, spacing, horizontal orientation, central location, and relationship to the projectors." Dkt. 165 at p. 13. Its statement that it "does not contend that three bars are a freestanding patent," Dkt. 165 at p. 6, is therefore not a concession it can afford.

The Court should grant the Motion because the sole non-prior-art commonality cannot by itself support a finding of substantial similarity. *ABC Corp. I*, 52 F.4th at 942; see also *Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, 827 F. Supp. 2d 1150, 1155-57 (S.D. Cal. 2011) (granting summary judgment of noninfringement where the feature the claimed and accused designs shared was disclosed in the prior art).

**C. Arex's Experts Supplied the Point-of-Novelty Framework**

Arex says its use of prior art is the ordinary-observer test rather than the abolished point-of-novelty test. Dkt. 165 at pp. 20-21. The label is not the issue; what its experts wrote is. Fletcher's opinion is stated as a rule of decision keyed to one feature: "where the accused design includes a feature ('Triple Liner') of the claimed design that departs conspicuously from the prior art, one must give such feature due weight in analyzing" infringement. JSF 51. Slifer's opinion is that "[t]he closest prior art, the '627 Patent[,] has many of the same features as the '634 Patent

and the Accused Product but fails to include the prominent triple horizontal led bars." JSF 68. All undisputed.

Each opinion runs the same way: it identifies one feature, ties the conclusion to that feature's absence from the art, and stops. *Egyptian Goddess* permits a factfinder to weigh such a feature, but only within the overall comparison. 543 F.3d at 677-78.

Slifer's report also states the answer to this Motion. Paragraph 66 says that "[t]here are small differences between the Accused Product and the '634 Patent that weigh in favor of the[] determination that the Accused Product is not substantially the same as the '634 Patent," identifies the inner side lamp and the outer peripheral light as the examples, and adds that "[t]hese differences in these features are small but could be important to the eye of the hypothetical ordinary observer." JSF 69 (undisputed).

Arex answers that "small" is the operative word and that the passage is "not a concession to ZYA's ultimate conclusion" but "a reasoned weighing of evidence." Dkt. 165 at p. 15. That reverses the sentence: the report does not say the differences are immaterial; it says they "weigh in favor of" noninfringement and "could be important." A party does not create a genuine dispute by arguing against its own expert's report.

Arex adds that Slifer's two premises are "the two halves of the same passage in *Egyptian Goddess*." Dkt. 165 at p. 18. They are, and that is ZYA's point: the rule Slifer quoted applies "when the claimed design is close to the prior art designs," *Egyptian Goddess*, 543 F.3d at 676; JSF 71 (undisputed), and Arex has admitted the claimed design shares its perimeter, its stacked projectors, its perimeter band, and its inner lamp with D863,627, JSF 17-20. The rule cuts against him, and the Court should grant the Motion.

### D. The Three-Way Comparison Resolves This Motion

The comparison Arex says the Court should make is the comparison that ends this case.

Where the designs are not plainly dissimilar, the factfinder compares the claimed design, the accused design, and the prior art. *Egyptian Goddess*, 543 F.3d at 678. The prior art is what gives that comparison its content: "the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art," and "when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* at 676. "Where there are many examples of similar prior art designs, . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id.* at 678.

Arex quotes the half of that discussion that favors it — that an accused design copying a feature "that departs conspicuously from the prior art" is "naturally more likely to be regarded as deceptively similar." Dkt. 165 at p. 21 (quoting 543 F.3d at 677). The same discussion supplies the limit: a claimed design made of old features supports a finding of infringement "[i]f" that combination "creates an appearance deceptively similar to the accused design, even to an observer familiar with similar prior art designs"; "[o]therwise, infringement would not be found." *Id.* at 677-78. And when the court applied the test to its own record, the prior art decided it: "[i]n light of the similarity of the prior art buffers to the accused buffer," "no reasonable fact-finder could find that [the patentee] met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design." *Id.* at 682. The court held the same this year: a three-way comparison with the closest prior art "further supports the conclusion that no reasonable jury could find the

claimed and accused designs substantially similar." *Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981, 993 (Fed. Cir. 2026), reh'g en banc denied, 2026 WL 2318398 (Fed. Cir. Aug. 11, 2026); see also *Wallace v. Ideavillage Prods. Corp.*, 640 F. App'x 970, 978 (Fed. Cir. 2016) (nonprecedential) (affirming summary judgment of noninfringement where no reasonable ordinary observer familiar with the prior art would be deceived).

The Joint Statement identifies what distinguishes the claimed design from D863,627, and Arex admits all of it — and admits that on those same points the accused headlight departs from the patent. The claimed projector lights are "rounded with truncated top and bottom edges" with a "backward-pointing arrow" on the bezel side, JSF 26; D863,627's are square and rectangular with rounded corners, JSF 27; the accused headlight's are rectangular, JSF 37, with a "Y" shape on the bezel side, JSF 38. The claimed perimeter LED bar is "interrupted by an elongated horizontal band," JSF 28; D863,627's runs uninterrupted, JSF 29; the accused headlight omits the interrupting band, JSF 40. The claimed design shows three substantially square elements at the outer ends of the central bars and seven horizontally spaced short vertical elements, JSF 30-31; the accused headlight includes neither, JSF 39, 41. It adds three features the claimed design does not show at all: a vertical array of closely spaced horizontal bars in the inner side lamp, JSF 42; a centrally located outwardly protruding wedge on the lens, JSF 44; and a downwardly protruding portion on the bottom edge, JSF 45. All undisputed.

Arex does not dispute that comparison. It makes it: "Nor does Arex dispute that, on several of those details, the accused product resembles D863,627 more than it resembles the claimed design." Dkt. 165 at pp. 14-15 (citing JSF 27, 29, 37, 40). Everything else the two designs share is background the prior art already supplies. *ABC Corp. I*, 52 F.4th at 942. What is left drawing the accused headlight toward the patent is the single commonality Fact 33 isolates — and the Joint Statement qualifies even that. The fact establishing the shared bars is ZYA's own, and it states that the

two designs include the three centrally located bars "albeit with different shapes at their termination." JSF 32 (undisputed); see JSF 39. Arex acknowledges it. Dkt. 165 at p. 15. The one feature the prior art does not supply is therefore not a feature the accused headlight reproduces in the claimed form.

Against that, Arex's affirmative statement of the three-way result rests on two facts: that "both of Arex's experts found the accused headlight closer to the claimed design than to that art." Dkt. 165 at p. 14 (citing JSF 76, 80). Arex's own replies confine both to report content. JSF 76, 80; see supra § II.A. Fact 75, which asserts that Fletcher used same-view three-way comparison charts, is disputed. JSF 75. The Joint Statement thus contains no admitted fact that the accused headlight is visually closer to the claimed design than to the closest prior art — only admitted facts that two reports say so.

Arex appended the same objection to each of those descriptions: that it disputes any inference that an admitted detail determines the overall ornamental impression. JSF 37-42, 44-45. That contests the weight of an admitted fact, not the fact, and the evidence cited with it — Slifer's report at paragraphs 62 and 66 through 73 — contradicts none of the descriptions Arex admitted. Counter-evidence "that falls short of contradicting the proffered fact" leaves the fact undisputed. Dkt. 163 ¶ 15(b).

Arex's remaining answer is that a jury "could nevertheless regard those differences as localized contour, termination, and finish differences within a composition organized around the same central three-bar relationship." Dkt. 165 at p. 15. But the differences Arex calls localized are the features that distinguish the claimed design from D863,627, and on those features Arex places the accused headlight with the art. Those are the points to which an observer conversant with that art is drawn. *Egyptian Goddess*, 543 F.3d at 676, 678.

Summary judgment of noninfringement should therefore be entered.

### E. Arex's Authorities Do Not Reach This Record

Arex's response on the law answers a motion ZYA did not make. None of the decisions it relies on granted or affirmed summary judgment of noninfringement on a prior-art comparison.

Arex invokes *Amini* for the proposition that a court may not analyze "each element separately instead of analyzing the design as a whole," and *Crocs* for its caution against a "mistaken checklist for infringement." Dkt. 165 at p. 15. ZYA agrees with both, and neither reaches this Motion. *Crocs* reversed a determination built on a detailed verbal claim construction, 598 F.3d 1294 (Fed. Cir. 2010), and ZYA has asked the Court to construe nothing. *Amini*, 439 F.3d 1365 (Fed. Cir. 2006), predates *Egyptian Goddess*, which cited it in explaining that the point-of-novelty framework could focus attention "on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry." 543 F.3d at 677 (citing *Amini*, 439 F.3d at 1370-71). That is the method Arex's experts used. JSF 50-51, 67-68.

ZYA's Motion does not stop at a feature comparison: it identifies what the prior art discloses, JSF 17-20, 23-25, what distinguishes the claimed design from that art, JSF 26-31, and whether the accused headlight took those distinguishing features, JSF 37-45, before asking the overall-impression question the ordinary observer test poses. Describing features is how the three-way comparison is performed, as Arex concedes. Dkt. 165 at p. 6 ("[f]eatures may be described to aid the analysis"). The Federal Circuit said the same last year: the inquiry "necessarily focuses on the similarities or differences of individual features of the claimed and accused designs, as well as the existence of other non-common features and the arrangement of the features in the overall design." *Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349, 1358 (Fed. Cir. 2025).

*Sport Dimension* fails for the same reason. Dkt. 165 at p. 12. ZYA has not asked the Court to eliminate any ornamental aspect of any element; it compares the design shown in the five issued figures. JSF 2-4.

That leaves the proposition Arex draws from *Southland Sod*, that "summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case." Dkt. 165 at p. 10. Arex states the limit itself: a "'wholly conclusory' expert opinion will not carry the patentee's burden." Dkt. 165 at p. 10. Federal Circuit law supplies the rest. An expert's trial testimony and an expert's Rule 56 affidavit are not measured alike: the opposing affidavit "must do more by 'set[ting] forth specific facts showing that there is a genuine issue for trial,'" and must supply its factual foundation "in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (affirming summary judgment of noninfringement). "It is well-established that unsupported expert opinions do not create a genuine issue of material fact." *Minkin v. Gibbons, P.C.*, 680 F.3d 1341, 1352 n.5 (Fed. Cir. 2012).

The Federal Circuit has applied that limit in design-patent cases, affirming summary judgment of noninfringement in *Range of Motion*, 166 F.4th at 991-93, and in *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1345 (Fed. Cir. 2020), and reversing the denial of judgment as a matter of law where the patentee's infringement expert was "wholly conclusory," *Top Brand*, 143 F.4th at 1362.

Arex's answer is that Slifer's report "does more than state a bottom-line result." Dkt. 165 at p. 22. That answer poses a dilemma Arex cannot escape. If the report is conclusory, it does not create a genuine dispute. *Novartis*, 271 F.3d at 1051; *Minkin*, 680 F.3d at 1352 n.5. If it is instead the reasoned analysis Arex says it is, the Court must credit what that analysis concludes — that the identified differences "weigh in favor of" noninfringement. JSF 69 (undisputed). Either way, the Motion should be granted.

### F. Willfulness Falls With Infringement

Count Two is a claim for willful infringement that incorporates Count One. JSF 56 (undisputed). Arex agrees: "ZYA is correct that willful infringement depends on infringement." Dkt. 165 at p. 23. Judgment for ZYA on noninfringement therefore disposes of Count Two, and the Court need not reach Arex's allegations concerning notice or knowledge.

Arex is also correct that Fact 55 states a start date rather than an end date. Dkt. 165 at p. 23. ZYA does not contend otherwise. Arex's verified response dates the conduct it complains of from January 2021, JSF 55 — before the '634 Patent issued, JSF 1 — which bears on the recoverable period, not on the ground for judgment.

The Court should enter judgment for ZYA on Count Two as derivative of Count One.

## III. CONCLUSION

Arex has admitted the features of the claimed design, the features of the accused headlight, what the prior art discloses, that the triple bars are the only commonality the prior art does not supply, and that on several of the distinguishing features the accused headlight resembles the art instead. What is left rests on facts that, by Arex's own reply, establish only what its experts wrote. ZYA respectfully requests summary judgment of noninfringement of U.S. Design Patent No. D909,634, judgment for ZYA on Count One of the Complaint, and judgment against Arex on Counts One and Two of the Fourth Amended Counterclaims.

Dated: September 10, 2026

**GLACIER LAW LLP**

By: /s/ Jie Li

Jie Li
*Attorney for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd., certifies that this reply memorandum is 11 substantive pages, which complies with the 12-substantive-page limit set by Paragraph 12(b) of the Court's Standing Order (Dkt. 163), which applies notwithstanding L.R. 11-6.1 and 11-6.2.

Dated: September 10, 2026

/s/ Jie Li

Jie Li

## CERTIFICATE OF SERVICE

I hereby certify that on this September 10, 2026, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

Date: September 10, 2026

/s/ Jie Li

Jie Li, Esq.

jie.li@glacier.law

Glacier Law LLP

*Attorney for Plaintiff and Counterclaim-Defendant Zhejiang Yuanzheng Auto & Motorcycle Accessories Co., Ltd.*